[Civil No. 253.  Filed February 13, 1889.]

[20 Pac. 607.]

## T. L. STILES, Assignee, Defendant and Appellant, v. M. G. SAMANIEGO, Plaintiff and Appellee.

1. CORPORATIONS—CREDITOR'S BILL—STOCKHOLDERS—UNPAID SUBSCRIP-
   TIONS—PLEADINGS.—A complaint which alleges the recovery of cer-
   tain judgments against a corporation while the subscriptions of
   H. and T. were vital and unpaid, and that execution thereon against
   its property had been returned *nulla bona*, states a sufficient cause
   of action in that connection to reveal the liability of H. and T. and
   hence the assignee of their estates.

2. PLEADING—NONJOINDER—WAIVER—COMP. LAWS ARIZ., CHAP. 48, SEC.
   40, P. 415, CITED.—The objection that there was a nonjoinder of a
   necessary party should be taken either by a demurrer or an answer,
   and, this not having been done, that objection must be deemed
   waived. Statute, *supra.*

3. ASSIGNMENT FOR BENEFIT OF CREDITORS—CREDITORS—LIEN—ASSIGN-
   OR'S INTEREST TERMINATED—NECESSARY PARTIES—CREDITOR'S BILL.
   —By virtue of an assignment every *bona fide* creditor of the as-
   signor has, in equity, a *quasi* lien upon the estate assigned, *pro rata*

of his debt, as was collectible under the terms of the assignment. The assignment being general for the benefit of creditors, the assignors being insolvent, ceased by virtue of the assignment to have any further interest in the estate assigned, for by its terms, if there was any estate remaining, after paying the individual debts of the assignors, it was to be applied to liquidating the partnership debts of the firm of H. & Co. Therefore H. and T., assignors, were not necessary parties.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. William H. Barnes, Judge. Generally affirmed.

The facts are stated in the opinion.

J. A. Anderson, and Haynes & Mitchell, for Appellants.

The complaint does not state facts sufficient to constitute a cause of action, nor the findings facts sufficient to warrant a decree.

Nothing is stated or found which would authorize any judgment against the assignee. An assignee may be compelled in equity to distribute the trust fund among the creditors, but in the absence of a statute providing a method of proving a debt, he cannot be sued for that purpose without joining his assignor. There is not a mere nonjoinder of a necessary party, but a total failure to state a cause of action against the party sued. The complaint shows that no indebtedness existed in favor of the plaintiff or his assignors, either immediate or remote, against Toole or Hudson at the time of the assignment by them to defendant Stiles, nor until the return of the execution against the railroad company, *nulla bona,* nearly three years after the assignment.

The complaint alleges that "Hudson and Toole being insolvent on the ninth day of May, 1884, made a *general assignment* for the *benefit of their creditors.*" This assignment inured to the benefit of those only who were *creditors,* and the property and assets assigned can be applied only to the payment of *debts* then existing. *Railroad Co.* v. *Burnside,* 5 Exch. 129; Burrill on Assessments, p. 647, sec. 427 (4th ed).

A debt is "a sum of money due by certain and express agreement." "The distinguishing and necessary feature is,

that a fixed and specific quantity is owing, and no future valuation is necessary to settle it." Bouvier's Law Dictionary, title "Debt."

A subscription for railway shares does not create a debt within the meaning of the bankrupt law, or law relating to assignments, until calls are made, and the bankrupt or assignor is liable for calls made after the assignment, and the assignee is not. *Railroad Co.* v. *Burnside,* 5 Exch. 129; *American File Co.* v. *Garrett,* 110 U. S. 288, 4 Sup. Ct. Rep. 90; Burrill on Assessments, p. 647.

No action can be maintained against Stiles upon the subscription of Hudson or Toole to compel the payment of any part thereof, because these subscriptions did not pass to him by the assignment, and he is not the owner of them either as trustee or otherwise. Laws of Arizona 1879, p. 91, secs. 11 and 12; *Midland G. W. Ry.* v. *Gordon,* 16 Mees & W. 804.

Neither the railroad company nor its creditor, the plaintiff, have any lien upon the assets of either Hudson or Toole's estate. This proceeding is therefore not *in rem,* and the presence of Toole and Hudson as defendants, is essential; for if the decree in this case would not be valid against them personally, if they should return to this territory, it cannot be valid against their assignee.

Jeffords & Franklin, for Appellee.

When Toole and Hudson subscribed to the capital stock of the Tucson and Gulf of California Railroad Company they became debtors of the corporation to the amount of the subscription, $10,000 each. This was in 1882. On May 8, 1884, the date of their assignment to T. L. Stiles, this subscription was still unpaid. It was a debt due from them to the corporation; it was one of the debts for the payment of which they assigned their property to T. L. Stiles; for, as said by the supreme court of the United States, "by his subscription each subscriber becomes a several debtor to the company, as much so as if he had given his promissory note for the amount of his subscription." *Hatch* v. *Dana,* 101 U. S. 205-215. And again: "It cannot be doubted that one who has become bound as a subscriber to the capital stock of a corporation

must pay his subscription if required to pay the obligations of the corporation. . . . After having bound himself to contribute, he cannot be discharged from the obligation he has assumed until the contribution has actually been made, or the obligation in some lawful way extinguished." *Hawley* v. *Upton,* 102 U. S. 314.

The debt of Hudson and Toole was a debt due from them to the corporation, and it was the duty of Mr. Stiles to pay that debt, as well as other debts, when called on, to extent of the assigned property.

The railroad company is indebted to the plaintiff, Samaniego, but is insolvent. Under these circumstances plaintiff could bring an action in equity to compel it to call in its unpaid subscriptions, so as to pay his debt. Or he could bring suit directly against one or more of the subscribers and directly compel payment to himself of the unpaid subscription, or as much thereof as would be necessary to pay his debt.

This has been specifically decided in *Hatch* v. *Dana,* 101 U. S. 205, and it is under the authority of that case that the present action was brought.

The court said: "The liability of a subscriber for the capital stock of a company is several, not joint. By his subscription each becomes a several debtor to the company, as much so as if he had given his promissory note for the amount of his subscription. . . . A creditor's bill merely subrogates the creditor to the place of the debtor, and garnishes the debt due to the indebted corporation. It does not change the character of the debt attached or garnished." *Hatch* v. *Dana,* 101 U. S. 205. See, also, *Ogilvie* v. *Knox Ins. Co.,* 22 How. 380-392.

The record shows that the point of nonjoinder of parties in not making Hudson and Toole defendants, was not raised in the court below. It was not raised by demurrer or answer. There is no bill of exceptions to that point, nor is it assigned as error. This court cannot consider the question.

WRIGHT, C. J.—This suit was brought against the appellant, Stiles, to recover a judgment against him, as the assignee of Charles Hudson and James H. Toole, and also as assignee of the firm of Hudson & Co., and against certain

other stockholders in the Tucson and Gulf of California Railroad Company. In 1882, in the month of January, Charles Hudson and James H. Toole each subscribed for one hundred shares of stock in the said corporation, known as the "Tucson and Gulf of California Railroad Company," of the aggregate value of $10,000. On the above subscription each of the above-named subscribers, Charles Hudson and James H. Toole, paid about $691, leaving the balance unpaid. In May, 1884, the said Hudson and Toole, being insolvent, each made an individual and general assignment to the appellant, Stiles, of all his property, for the benefit, first, of his individual creditors, and then for the general benefit of the creditors of the firm of Hudson & Co., of which firm they were the sole members. Contemporaneously with this assignment, the firm of Hudson & Co. made a general assignment, also to the said appellant, Stiles, for the benefit of their creditors. In 1886 one Lazard obtained, in the district court of Pima County, a judgment against said railroad company for the sum of $6,220.50, and in the same year one Parker obtained a judgment against the corporation for the sum of $2,206.50. In March, 1887, and after executions had been duly issued on these judgments, respectively, and returned *nulla bona,* they were sold and assigned to appellee herein, who now sues to subject whatever individual estate of the said Hudson or Toole there may be in the hands of said Stiles, as such assignee, to the payments of appellee's demand.

The complaint is substantially a creditors' bill in equity, demanding general relief, but seeking to subject a certain fund belonging to the individual estate of the assignor Toole in the hands of the assignee to the satisfaction of complainant's judgments. The case was tried by the court sitting as a jury. The court found the facts substantially to be that Charles Hudson and James H. Toole subscribed the said amounts of stock to said railroad company at the time alleged, and had paid but said small portion thereof; that they made said individual and firm assignments to Stiles, the appellant; that the assignee accepted the trust, etc.; that Samainego, the plaintiff and appellee, is now the *bona fide* owner of said judgments against said railroad company, having purchased the same from said Lazard and Parker; that the said assignee,

Stiles, had paid out to the creditors of the firm of Hudson & Co. funds belonging to the individual estate of said James H. Toole, amounting to about the sum of $5,489.18; that said assignee, Stiles, had in his hands, however, enough of assets belonging to the estate of Hudson & Co. to pay back to said Toole's estate said amount; and that each of the defendants was liable to plaintiff and appellee, by reason of the said subscriptions to said railroad company, to an amount equal to appellee's demand, viz., the sum of $8,427, except Goldschmidt, who was not found liable at all, and Steinfeld, who was found liable only to the amount of $885.

These facts were essentially as they had been alleged in the complaint. But the defendant and appellant, Stiles, demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, in that it did not show that the judgments of said Lazard and Parker were recovered upon any indebtedness due from the said Tucson and Gulf of California Railroad Company; that, at the respective dates of said judgments, the complaint did not show that the said Toole or the said Hudson was still a stockholder in said railroad company; that said complaint showed on its face that the said assignments of the said Charles Hudson and James H. Toole were made for the benefit of their creditors, they being insolvent; that said railroad company was not entitled to share in the benefits thereof; that neither said Lazard nor said Parker was on the ninth day of May, 1884, (the date of said assignments,) a creditor of said corporation, or of said Hudson or Toole, and therefore neither of them was entitled to share in the benefits of said assignment. The other defendants, Steinfeld, Tritle, and Goldschmidt, filed a very general denial; but the said assignee, Stiles, under our peculiar practice act, that requires the demurrer, answer, etc., to be all put in one pleading, filed, not only a more serious and elaborate original answer, but also a more extended and critical amended answer, and subsequently a most exhaustive crosscomplaint; so that the party who waged the serious conflict below and the real appellant here is the said Stiles, as assignee, under said assignments.

The first question raised by the demurrer, that the complaint did not state facts sufficient to constitute a cause of

action, because it did not show that, at the time Lazard and Parker obtained their judgments against the Tucson and Gulf of California Railroad Company, the said company was indebted to them, we think is not tenable. These judgments were obtained in the district court of Pima County, and, in the absence of something appearing on the face of the complaint to the contrary, the presumption is conclusive that they were obtained upon *bona fide* demands. These judgments imported absolute verity; and the complaint having alleged their recovery, while the subscriptions of Hudson and Toole were vital and unpaid, and that executions thereon against the property of said railroad company had been returned *nulla bona,* a sufficient cause of action was stated, in that connection, to reveal the liability of said Hudson and Toole, and hence of the assignee of their estates.

The objection that there was a nonjoinder of a necessary party should have been taken either by demurrer or answer, and, neither having been done, that objection must be considered as waived. See Comp. Laws Arizona, ch. 48, sec. 40, p. 415.

But even if the objection had been made, in one of the modes pointed out by the statutes, we cannot see that it should have been availing. By virtue of the assignments, every *bona fide* creditor of the assignors at the time of the assignments had, in equity, a *quasi* lien upon the estates assigned, *pro rata* of his debt, as was collectible under the terms of the assignments. These assignments being general, for the benefit of creditors, the assignors, Hudson and Toole, being insolvent, ceased, by virtue of the assignments, to have any further interest in the estates assigned; for by the terms of said assignments, if there was any estate remaining, after paying the individual debts of the assignors, it was to be applied to liquidating the partnership debts of the firm of Hudson & Co. In such a case, contingencies might arise in which there would still be something remaining, in which event an interest would revert to the assignors. They might then become necessary parties. But no such case is presented here, and we are unable to see why Hudson and Toole, the assignors, are essential parties. The court had undoubted jurisdiction over the assignee and the trust-estates in his hands.

The other question raised by the demurrer is, in substance, this: that, at the time of the assignments, in May, 1884, the Tucson and Gulf of California Railroad Company was not a creditor of either Hudson or Toole; and, the said assignments being for the benefit of those only who were creditors at the time they were made, therefore the said railroad company was not entitled to the benefits thereof. Upon this proposition the appellant's learned counsel make a subtle and elaborate argument. They say that the property and assets assigned can only be applied to the payment of debts existing at the time of these assignments, and that a subscription for railway shares does not create a debt, within the meaning of the law relating to assignments, until calls are made, and that, if calls are made after the assignment, the assignor, and not the assignee, is individually liable.

We entertain no doubt whatever that, at the time these assignments were made,—as the law is now well established, —both Hudson and Toole were debtors of the Tucson and Gulf of California Railroad Company, and that said railroad company was entitled to the benefits of the assignments which they made. Whatever may have been the views of the older law writers and decisions, as to whether or not a subscription of the capital stock of a corporation was a debt, the trend of modern adjudication seems to have been steady towards regarding it as a debt; as much so as a promissory note, or other liquidating demand. Suppose that, instead of a subscription, each of the assignors had executed to said railroad company his promissory note for the sum of $10,000, will it be pretended that the judgment creditors of the railroad company, after executions on their judgments had been unavailing, could not have garnished the makers of the notes, and attached the debts represented by them in the hands of the debtor? Well, when Hudson and Toole made the assignments, if they had made these notes, instead of their subscriptions, would not the payees of the notes have been existing creditors entitled to the benefits of the assignments? And would not the judgment creditors of the payees of the notes be entitled to be subrogated to the rights of the said payees? And if, as makers of the notes, they would be liable as debtors of the corporation, would not their assignee, when they made an

assignment for the benefit of their creditors, be liable in their stead?

In the case of *Ogilvie* v. *Knox Ins. Co.*, 22 How. 380, the United States supreme court said : "As stockholders, who have not paid in the whole amount of the stock subscribed and owned by them, they stand in the relation of debtors to the corporation for the several amounts due by each of them. · As to them, this bill is in the nature of an attachment, in which they are called on to answer as garnishees of the principal debtor."

And in *Hatch* v. *Dana*, 101 U. S. 205, the federal supreme court said: "By his subscription each becomes a several debtor to the company, as much so as if he had given his promissory note for the amount of his subscription. At law, certainly, his subscription may be enforced against him without joinder of other subscribers, and in equity his liability does not cease to be several. A creditor's bill merely subrogates the creditor to the place of the debtor, and garnishes the debt due to the indebted corporation." And the court, in this same decision, quote approvingly *Henry* v. *Vermillion etc. R. Co.*, 17 Ohio 187, where it said: "When a company, being insolvent, as in this case, abandons all action under its charter, the original mode of making calls upon the stockholders cannot be pursued. The debt, therefore, from that time must be treated as due without further demand." And then Mr. Justice Strong adds: "This means, of course, as between the debtor and the creditor of the corporation."

In equity it is not essential that calls shall have been made, in order to obtain relief, where the affairs of the corporation have been put into process of liquidation. Calls are simply one 'step towards payment or the collection of stock subscriptions, when the corporation is in full operation under this charter. A court of equity, however, can enforce the payment of these subscriptions whether calls have been made or not.

Nor do we think the court erred in sustaining the demurrer to the cross-complaint. This was not a suit to wind up the affairs of the Tucson and Gulf of California Railroad Company, but a suit to collect certain judgment demands against the company, and to subject a certain trust fund, belonging

to an assigned estate of one of the subscribers to the said company, in the hands of the assignee, to satisfy these judgment demands. To us it is clear that this suit could have been maintained against Stiles, as the assignee of Charles Hudson, alone, or as assignee of James H. Toole alone, or against any other single one of the subscribers to said railroad company. In such cases, there is no misjoinder of parties because all the subscribers are not brought into the suit. Because the debt might be made out of some other stockholder is no reason why the one sued, or his representative, should not pay the amount of his subscription. We think, therefore, the judgment of the court below should be generally affirmed. There is, however, the technical error. The minute entries show that the suit was dismissed as to the defendant F. A. Tritle, yet there is a decree for $8,427 entered up against him. This was manifestly an oversight. The cause will therefore be reversed and remanded, with instruction to amend the decree by striking out the name of F. A. Tritle as a defendant.

Porter, J., and Barnes, J., concur.