[Civil No. 2578.   Filed May 9, 1927.]

[255 Pac. 991.]

WELKER & CLIFFORD, a Partnership Composed of J. R. WELKER, HENRY CLIFFORD and EUGENE EVANS, Appellants, v. H. M. MER-RILL, Appellee.

Mr. E. L. Spriggs and Mr. Luther P. Spalding, for Appellants.

. Mr. J. Verne Pace and Mr. Jesse A. Udall, for Appellee.

LOCKWOOD, J.—H. M. Merrill, hereinafter called plaintiff, brought suit against J. R. Welker, Henry Clifford and Eugene Evans, copartners under the firm name of Welker & Clifford, hereinafter called defendants, to recover damages for an alleged breach of a contract of purchase of cotton. The case was tried before the court without a jury, and judgment was rendered in favor of plaintiff. After the usual motion for new trial was overruled, defendants have appealed to this court.

There are but two assignments of error, which we will deal with in their order. The first is that there was a failure to join a necessary party plaintiff, the evidence showing the cotton which was the subject matter of the contract in question was owned jointly by plaintiff and one W. L. Baker. Defendants in this case answered merely by a general denial, although it appears that at the time of filing their answer they knew Baker was the owner of half the cotton. Paragraphs 468 and 469, Revised Statutes of Arizona of 1913, Civil Code, read in part as follows:

"The defendant may demur to the complaint when it appears upon the face thereof: . . .

"(4) That there is a defect of parties, plaintiff or defendant."

"469. When any of the matters enumerated in subdivisions one, three and four of the preceding section do not appear upon the face of the complaint,

the objection may be taken by answer setting forth the objection in abatement or in bar of the action. If no such objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court and the objection that the complaint does not state facts sufficient to constitute a cause of action.''

We have passed upon this question repeatedly, and have always held that a failure to raise the question of nonjoinder of parties either by demurrer or answer waived the objection. *Jenkins* v. *Irvin,* 20 Ariz. 164, 178 Pac. 33; *Stiles* v. *Samaniego,* 3 Ariz. 48, 20 Pac. 607; *Colvin* v. *Fagg,* 30 Ariz. 501, 249 Pac. 70; *Funk* v. *Funk,* 76 Colo. 45, 230 Pac. 611; *Church* v. *Zywert,* 58 Mont. 102, 190 Pac. 291.

The second assignment is that the evidence failed to show that the cotton in question came within the contract relied upon by plaintiff. In order that we may consider this objection, it will be necessary that we review the testimony briefly. It appears that plaintiff, Merrill, was the owner of some eighty acres of land which had been leased to a tenant and planted to cotton. On the 30th of September, 1925, plaintiff and defendants entered into a written contract of purchase and sale of the cotton raised on the Merrill place, which contract reads as follows:

"Safford, Arizona, September 30th, 1925.

"Cotton Contract.

"This contract made and entered into in duplicate on this day of September 30th, 1925, by and between Welker & Clifford, hereinafter known as party of the first part, and H. M. Merrill, hereinafter known as party of the second part, Graham Co.

"The party of the second part agrees to sell all *picked white cotton* raised on his farm, one hundred bales more or less, in the 1925 season, at 25 cents per pound *round,* delivery to be made by Jan. 1st, 1926, and payment of said cotton is to be made upon delivery of same to cotton yards.

"It is further agreed that party of the second part is to have this cotton ginned at the Solomonville gin.

"In the consideration of one thousand dollars, receipt of which I hereby acknowledge, I, the undersigned, have agreed to the above sale. [Signed] Welker & Clifford, by J. R. Welker, Party of the First Part. Witness: [Signed] H. Merrill." (Italics ours.)

Pursuant to said contract some ninety-odd bales of cotton were delivered by Merrill to defendants and by them paid for. Some time about the 20th of December plaintiff went to defendants' office with the warehouse receipts for some twenty-three bales of cotton, to collect the money therefor as he had done with the other ninety-odd bales, but after some discussion defendants refused to accept and pay for the twenty-three bales. There is some dispute as to what was said at this time by the parties, plaintiff claiming that defendants assigned as an excuse only the fact that they had not the money to make the payment, while defendants insist their refusal was based on their not having as yet had a chance to inspect the cotton to see whether it came up to the contract. At all events, about the 12th of January, defendants having then according to their own statement inspected the cotton, including some ten other bales tendered them by plaintiff under the contract, refused to accept it, claiming that it was not of the kind and quality they had agreed to take, as it was spotted or tinged with yellow, and not white. Plaintiff then sold the cotton for the best price he could obtain and brought suit against defendants for the difference between the purchase price set up in the contract and the amount for which it was actually sold.

There is no dispute between the parties as to the amount of cotton involved, nor that plaintiff did his best to minimize the damages to him resulting from

defendants' failure to take and pay for the cotton at the contract price. The issue is whether or not the cotton was within the terms of the contract. It is the contention of plaintiff that the word "round" in the contract means that the purchaser agreed to take all cotton of whatever kind, grade or quality, raised on his farm. Defendants, on the other hand, insist that it refers only to "white cotton," eliminating all discolored or spotted cotton, and that as the thirty-three bales in dispute were spotted and discolored, they were not obliged to accept them.

We do not think it necessary to determine which one was right as to the meaning of the contract. We will assume defendants' theory of construction is correct, and that they were bound to accept only "white cotton." It appears that plaintiff on the trial of this case testified, referring to the thirty-three bales of cotton involved in the suit, as follows:

"Q. You don't know then whether this is middling white, middling spotted, or middling tinged? A. Oh, no; I know it was white.

"Q. That is, it looked white to you? A. Yes. Would to you too. They never complained about the grade of the cotton; it was that they was broke and couldn't use it."

It is true there was testimony offered on behalf of defendants to the effect the cotton in question was not "white," but rather what is known as "spotted" or "tinged." Taking into consideration, however, the evidence to the effect that defendants' first objection was not to the quality of the cotton, but their inability to pay for the same, that they made no examination of it for two or three weeks after it had been tendered and then only cut into some four or five bales, we cannot say the trial court might not properly have found that the cotton tendered by plaintiff was "white cotton," and therefore, even on

defendants' own theory of the contract, within its terms.

The findings actually made on this point read as follows. ·

" . . . The court finds the facts to be: That plaintiff and defendant did enter into the contract set out in the complaint; that the defendant has breached the terms of the contract; that by reason of said breach of the terms of said contract by defendant, plaintiff has been injured to the extent of the difference between the contract price of twenty-five cents (25¢) per pound, on 33 bales of cotton refused by the defendant, and the price for which plaintiff was compelled to sell the cotton, of eighteen and a half cents (18½¢) per pound; that plaintiff has performed all obligations by him to be performed under the said contract."

It will be seen that the so-called findings of fact do not specifically determine whether the cotton tendered by plaintiff was "white" or not, but merely "that the defendant has breached the terms of the contract; . . . that plaintiff has performed all obligations by him to be performed under the said contract . . . " They are in reality, of course, mere conclusions of law, and it therefore appears the court made no written findings of fact upon this issue. There is a familiar rule of this court that in the absence of findings of fact on a vital issue of a case we will presume that such findings were made by the trial court as are necessary to support the judgment, and that if there is evidence in the record which would sustain such presumed findings it will not be reversed. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587; *Thomas* v. *Newcomb,* 26 Ariz. 47, 221 Pac. 226; *Duncan* v. *Nowell,* 27 Ariz. 451, 233 Pac. 582.

There being sufficient evidence to sustain the judgment rendered, even on defendants' own theory of the law, it is necessarily affirmed.

ROSS, C. J., and McALISTER, J., concur.