271 P.2d 834

ANDERSON et ux.

v.

PIMA COUNTY DEPARTMENT OF PUBLIC WELFARE et al.

No. 5861.

Supreme Court of Arizona.

June 21, 1954.

Morgan & Waag, Tucson, for appellants.

Ross F. Jones, Atty. Gen., Carl W. Divelbiss, Phoenix, of counsel, for appellees.

PHELPS, Chief Justice.

This is an appeal from an order of the superior court of Pima County denying appellants' petition for the adoption of a minor child. For the protection of the child names and identifiable dates have been omitted.

The facts are that the minor child was born out of wedlock. The father never in any manner acknowledged the parentage of such child and nine days following its birth, its mother executed what purported to be a written relinquishment of the child to the Arizona Department of Public Welfare. In said relinquishment the mother consented to the adoption of said minor child by any person or persons deemed by "said welfare agency" to be fit and proper as adoptive parents.

Insofar as we are here concerned the state department of public welfare is authorized by law under the provisions of section 70-108(c), 1953 Supp., A.C.A.1939, to:

"Administer all child welfare activities, including importation of children; licensing and supervision of private and local public child-caring agencies and institutions; the care of dependent, neglected, and delinquent children in foster family homes, or in institutions, especially children placed for adoption."

Section 70-101, 1952 Supp., A.C.A.1939 defines "State Department" to mean:

"Arizona state department of public welfare." A welfare agency is defined by the same section as follows:

" 'Child welfare agency' or 'agency' means any agency or institution maintained by a municipality, county, person, firm, corporation, association, or organization to receive dependent, neglected, delinquent, or mentally or physically handicapped children for care and maintenance or for placement in a family home or any institution that provides care for unmarried mothers and their children".

Section 70-511, 1952 Supp., A.C.A.1939, authorizes a child welfare agency, if so authorized in its license issued by the state department of public welfare to place a child in a family home for care or for adoption; and section 70-512, 1952 Supp., A.C.A.1939, provides that:

"Whenever a child welfare agency licensed to place children for adoption has the permanent care, custody, and guardianship of a child, and the rights of the parents of the child have been terminated by order of a court or by a legally executed relinquishment of parental rights, the *child welfare agency* may give legal consent to the adoption of the child. The parents or the surviving parent of a child, or the mother of a child born out of wedlock, may relinquish the child to a *child welfare agency* licensed to place children for adoption by a written statement

signed before two (2) witnesses and acknowledged before a representative of the *child welfare agency*. No such relinquishment shall be valid unless a copy be approved by and filed with the state department of public welfare. Except in proceedings for adoption, or except as provided in this section, a parent shall not voluntarily assign nor otherwise transfer to another his rights and duties with respect to the permanent care, custody, and control of his child under sixteen (16) years of age." (Emphasis supplied.)

It will be seen from the above quotations that the state department of public welfare is not "a welfare agency" as defined by the above statute. It is therefore under the law unauthorized to accept a relinquishment of a minor child to it. In fact, under the provisions of section 70–512, supra, it is prohibited from so doing. Neither is the "state department" authorized under the law to give its consent to the adoption of any minor child in the state. That authority under the provisions of section 70–512, supra, is vested in *duly licensed child welfare agencies to whom permanent care, custody and guardianship of a child and the rights of the parents of the child have been terminated by order of a court or by a legally executed relinquishment of parental rights to such child welfare agency*. The attempted relinquishment to the state department of public welfare was and is void.

It appears, by inference, from the record that the baby was verbally turned over by its mother to the Department of Public Welfare on the date of its birth. The department on the same day placed the child with appellants for care promising to pay them therefor the sum which was subsequently paid. The child remained with appellants for two and one-half years, when it was removed from appellants' home for reasons unknown to them.

Thereafter appellants filed their petition in the superior court of Pima County seeking the adoption of said minor child. The court duly noticed the cause for hearing for February 16, 1953, in accordance with the provisions of section 27–204, 1952 Supp., A.C.A. 1939. The time for hearing was continued many times for reasons undisclosed in the record until May 11, 1953, when at the request of the court counsel for appellants and a representative from the Attorney General's office appeared "to argue the right of petitioners to file a petition for adoption of said minor." The matter was taken under advisement and on July 6 following appellants' petition was ordered denied.

There is nothing in the record to indicate the character of the question upon which the court sought enlightenment nor the grounds upon which the petition of appellants was denied. We suspect, however, that the order was based upon the theory that the court was without jurisdiction to entertain the petition in the absence of an allegation

or a showing of some kind that the consent of the department of public welfare for its adoption had been procured. As above pointed out, the department of public welfare has no authority under the law under any circumstances to grant or withhold its consent to the adoption of a minor child.

Appellants present two assignments of error as follows: The court erred:

1. In denying the petition of petitioners;

2. In denying the petitioners a hearing on the merits of the petition.

■ If the court was without jurisdiction to hear the petition and to pronounce judgment thereon the order and judgment must be affirmed. If it had jurisdiction it must be reversed. In order to determine this question an examination of the petition and the statutes relating to adoption must be examined. The petition contains no allegation that anyone having authority to consent to its adoption had consented to the adoption of said child and we are of the view that such an allegation under chapter 27, article 2, now sections 27–201 to 27–209 inclusive, 1952 Supp., A.C.A. 1939, is not necessary to vest the court with jurisdiction to hear and determine the matter. Section 27–203, 1952 Supp., A.C.A. 1939, after providing for consent of the parent or parents, guardian and a public or private welfare agency with authority to place children for adoption proceeds to provide, subsection (c) thereof, as follows:

"An adoption may be decreed without the consent of the parent or legal-ly appointed guardian when, after due hearing, the court shall determine that the interests of the child will be promoted thereby. In all such cases, the court shall make written findings of all facts upon which its determination is grounded."

The above quotation clearly vests the court with jurisdiction and power to decree the adoption of a child without the consent of the parents or legally appointed guardian. Their consent is not jurisdictional under the present law, therefore the decision in Westerlund v. Croaff, 68 Ariz. 36, 198 P.2d 842, has no application under the law as now amended.

Prior to the enactment of chapter 57, Session Laws of Arizona, 1933, the consent of a parent to the adoption of a child was not necessary if it appeared that the best interests of a child would be promoted by the adoption. Chapter 57, Session Laws of Arizona, 1933, supra, amended the law relating to consent and the provision permitting adoption without the consent of the parents or guardian was omitted from the adoption statute. It was restored by chapter 96, Session Laws of 1952, by the inclusion of subsection (c) of section 27–203 quoted above, and became operative on March 24, 1952.

■ The statute as amended does not expressly include a licensed child welfare agency in the list of those without whose consent the court may decree an adoption but certainly it was not the intention of the legislature to authorize the court to decree

the adoption of a child without the consent of its own parents or legally appointed guardian and withhold the power to do so without the consent of a welfare agency who at the most stands in the relation of loco parentis and whose sole authority under the law is to care for, maintain, or if licensed so to do by the state department of public welfare, place children in homes for care or for adoption. We hold that such could not have been and was not the intent of the legislative body but that it was the intent of the legislature to invest the court with power to decree the adoption of a child without the consent of anyone where, upon a hearing, it appeared that it would be for the best interest of the child to decree such adoption.

The court, having jurisdiction of the subject matter and of the parties, it became its duty to comply with the provisions of the statute and to accord to appellants a hearing pursuant to the provisions of section 27–206, 1952 Supp., A.C.A. 1939, and that it was without authority to deny the petition until after appellants had been given their day in court in compliance with the procedure set up by the legislature relating to adoption.

Judgment reversed with directions that appellants be accorded a hearing upon their petition according to the provisions of law relating thereto.

STANFORD, LA PRADE, UDALL and WINDES, JJ., concur.