472 P.2d 64

**In the Matter of the ADOPTION of a BABY BOY.**

**NATURAL MOTHER, Appellant,**

v.

**ADOPTING PARENTS, Appellees.**

**No. 9762–PR.**

Supreme Court of Arizona,
In Banc.
July 16, 1970.

W. Michael Hammer, Phoenix, for appellant.

Benton L. Blake, Phoenix, for appellee.

McFARLAND, Justice:

This case comes before us on a petition for review of a decision of the Court of Appeals reversing an interlocutory order of the Superior Court for the adoption of a baby boy by the adopting parents. 10 Ariz. App. 47, 455 P.2d 997. Decision of the Court of Appeals vacated.

The names of the persons involved are not set forth in this opinion and have been deleted from direct quotations from the record. They will be referred to as the baby boy, the adopting parents—father or mother, as appropriate—and the natural mother. The natural father will be referred to hereinafter as the natural father or the husband.

The natural mother at the time of the hearing was twenty-six years of age. She had previously been a resident of Minnesota. She is a graduate of high school, and for three months attended an airline business school at St. Paul, Minnesota. She had previously worked for The West Publishing Company in St. Paul as a typing clerk for about two and a half years. She

was married to the natural father August 1, 1963, in South Dakota, at which time she was one month short of twenty-two years of age. The husband had been previously married and was divorced. They moved from Minnesota on August 25, 1963, to Tucson, Arizona. While they were living in Arizona the infant child was born to them on the 19th day of October 1965. Six days later, on the 25th day of October, while the mother was lying on the couch with the infant child, the police came to the door and arrested her. She later pled guilty to two charges of passing checks with insufficient funds, and was given a sentence of one to five years in the Arizona State Prison on each of the charges, to run consecutively. She had previously pled guilty to a charge of "cashing a forged instrument" which instrument had been forged by the husband, in Monroeville, Missouri. She was given a six months suspended sentence and two years probation. Both she and her husband had been arrested on the charge, but she stated that she took the blame for the check.

Upon the arrest of the natural mother in Phoenix, the husband took the child to the adopting mother's brother, who called his sister [the adopting mother] and asked her to take care of the child. The adopting mother was a half sister of the natural father. The evidence shows that the adopting parents were responsible people, approximately twenty years older than the natural mother. The ages of their six children ranged from twenty-four to thirteen, the three youngest living with the parents at the time of the hearing. The adopting father had a substantial position, and both were fond of the infant child. The adopting mother was appointed guardian of the person and estate of the baby boy, with the understanding—according to the natural mother—that they would never seek his adoption. The record shows that the natural mother had never given her consent to the adoption. The adopting parents—after approximately a year and a half—filed a petition for the adoption of the baby boy, representing that the natural father of

the child had abandoned the minor child and wilfully deserted and neglected him, and had completely failed to provide the child with any financial assistance whatsoever—that the natural mother was at the time incarcerated in the Arizona State Prison serving two consecutive terms of one to five years. The record shows that after the filing of the petition for adoption the natural father died on May 9, 1967—before the hearing on the adoption. Since his death the adopting parents have received $82.20 a month from the Veterans' Administration and Social Security for the child which they deposited to the child's credit. The testimony of the natural mother was to the effect that the natural father had never held a job since their marriage except for a very short period; that he drank heavily, and that he was an alcoholic. This was corroborated by the social worker's report.

The court appointed Inez McLain, court investigator, and Catherine Fernandez, social worker, to investigate the case, who filed a joint report but did not personally appear at the hearing. The petition was set down for hearing, and the natural mother appeared and was ably represented at the time of the petition by a representative of the Legal Aid Society in Pinal County and the present attorney who is also a representative of the Legal Aid Society. She was well represented at both the trial and on appeal.

The natural mother's brother also appeared at the trial and testified to his willingness to assist his sister by caring for the child, and that their father would also assist in the child's care. The brother was farming 320 acres of land owned by the parents of the natural mother and her brother. A letter was also filed by the natural mother from her former employer, The West Publishing Company, in which it was stated that the company was perfectly agreeable to re-employing her, based upon her good work during her previous employment, and that if she continued to perform her work in the same manner she could be assured of permanent employ-

ment. The court in its interlocutory order for adoption made the following findings:

"1. That the petitioners herein are husband and wife and that they desire to adopt the said minor child herein as their own child.

"2. That * * * the natural father of said minor child died on May 9, 1967.

"3. That * * * the natural mother of said minor child has not consented to the adoption of said child by the petitioners.

"4. That the natural mother has not seen the child since October 25, 1965, when the child was six (6) days old.

"5. That on October 25, 1965, the natural mother was arrested in Maricopa County, Arizona, on one or more charges of having passed bogus checks or checks drawn on accounts of insufficient funds; that she subsequently pleaded guilty to two counts and was sentenced to serve consecutive terms of one to five years each."

The court further found that the natural mother at the time was in the Arizona State Prison, and would not be eligible for parole before January 1969 [the record shows that she was paroled some two months after that date]. The court further found that the natural mother was promised a job by her former employer, The West Publishing Company, at St. Paul, Minnesota [the record shows that she accepted such employment after her parole]. The court further found that the natural mother's brother and sister-in-law living in Herring Lake, Minnesota, were willing and able to take care of the child; that the natural mother was twenty-six years of age, in good health, without physical defects.

The court also found that the adopting father was forty-seven years of age and the adopting mother forty-five years of age; that they had six children, were in good health, and that the adopting father had a good position; that the adopting par-

ents had had the child since he was six days old, and that the adopting parents had given him good care, that they were entitled to an interlocutory order of adoption, which was granted, based upon the findings of fact. The court concluded that the best interests of the child would be promoted by permitting the petitioners to adopt him.

It is from this order of the court that the natural mother appeals. One of the questions presented is that § 8–104, A.R.S., is unconstitutional because it deprives the natural mother of her child without due process of law. This contention that there was not due process of law is not well founded. The natural mother was represented by counsel, and the proceedings of the court conform to the requirements in Caruso v. Superior Court, 100 Ariz. 167, 412 P.2d 463.

Counsel for the natural mother also contends that the trial court did not have jurisdiction for two reasons: One, that Judge Tang, the Juvenile Judge, had no authority to transfer the case to Judge Hardy for hearing. Rule 16(a) (2), Uniform Rules of Practice, 17 A.R.S., as amended February 1967, permits such transfers.

The next question is a more serious one. It is contended that the natural mother not having consented to the adoption, and there not being a finding by the trial court that the child was dependent, neglected, incorrigible, or delinquent, the court did not have jurisdiction.

The applicable sections of Arizona Revised Statutes, as amended, are as follows:

"§ 8–101. Adoption of minor

"A minor child may be adopted by an adult person as authorized, and subject to the rules prescribed in this article. The person adopting a child shall be at least ten years older than the person adopted, and the consent of the child, if over the age of twelve years, is necessary to its adoption.

"§ 8–102.  *Petition for adoption*

"A.  Petition may be made to the superior court of the county in which the petitioner resides for leave to adopt a child.  A petition by a person having a husband or wife shall not be granted unless both husband and wife join, if capable of giving consent.

\*    \*    \*    \*    \*    \*

"§ 8–103.  *Consent to adoption; parents; insane parent; child born out of wedlock; consent of guardian; public or private welfare agency*

"A.  Before the court may enter an order for the adoption of a minor, the provisions of this section which are applicable to the proceeding shall be observed:

"1.  Consent to the adoption shall be obtained from the individuals or agencies found capable of giving consent under the following circumstances:

"(a) The parents or surviving parent of the child, but if one of the parents has been legally declared insane or incompetent, consent need not be obtained from such person.

\*    \*    \*    \*    \*    \*

"§ 8–104.  *Consent; when unnecessary*

"An order of adoption may be entered without the consent of the parent or legally appointed guardian when, after hearing, the court determines that the interests of the child will be promoted thereby.  In such cases, the court shall make written findings of all facts upon which its order is founded."

In In re Webb's Adoption, 65 Ariz. 176, 177 P.2d 222, this Court, in referring to jurisdiction of adoptions, stated:

"The right of adoption was unknown to the common law and repugnant to its principles.  Such right being in derogation of the common law is a special power conferred by statute and the rule is that such statutes must be strictly construed.  Furgeson v. Jones, 17 Or.

204, 20 P. 842, 3 L.R.A. 620, 11 Am.St. Rep. 808.

"The jurisdiction to order adoption is vested in the superior court, Article 2, Section 27–201 to 27–210, A.C.A.1939, but before that power may be asserted the facts enumerated in the statute as authorized there should be made to appear. In re Gallegos, 21 Ariz. 250, 187 P. 573; see also In re Adoption of Susans', 37 A. 2d 645, 22 N.J.Misc. 181."

In Westerlund v. Croaff, 68 Ariz. 36, 198 P.2d 842, we interpreted the question of whether the consent of the parents or guardian was essential to the jurisdiction of the court in an adoption proceeding under the statute that existed at that time. The Court stated:

"The law governing the matter of adoptions in this state is found in Chapter 27, Article 2, A.C.A.1939, and the necessity of consent is covered by Sec. 27–203, which reads:

" '*Consent of parents or guardian.—The parents of the child, or the survivor of them, shall, except as herein provided, consent in writing to such adoption.*  If neither parent is living, the guardian of the child, or if there is no guardian, the next of kin in this state, may consent; or if there is no next of kin, the court may appoint some suitable person to act in the proceedings as next friend of the child to give or withhold such consent.' (Emphasis supplied.)

\*    \*    \*    \*    \*    \*

"The language of the statute being plain and unambiguous, we hold that under our law consent in writing of the living natural parents, or its statutory equivalent, is a jurisdictional prerequisite to a valid adoption.  This principle is stated in 2 C.J.S., Adoption of Children, § 18:

" 'Consent of the parties to an adoption, where required by the statute, is a jurisdictional fact and without it a valid order of adoption cannot be made  \*  \*'. See also Sec. 21–a(1) Ibid."

In the case of Anderson v. Pima County Department of Public Welfare, 77 Ariz.

339, 271 P.2d 834, in which we held that the State Department of Public Welfare is not authorized to give consent to the adoption of a minor child, we said:

"The facts are that the minor child was born out of wedlock. The father never in any manner acknowledged the parentage of such child and nine days following its birth, its mother executed what purported to be a written relinquishment of the child to the Arizona Department of Public Welfare. In said relinquishment the mother consented to the adoption of said minor child by any person or persons deemed by 'said welfare agency' to be fit and proper as adoptive parents.

\*     \*     \*     \*     \*     \*

"\* \* \* The petition contains no allegation that anyone having authority to consent to its adoption had consented to the adoption of said child and we are of the view that such an allegation under chapter 27, article 2, now sections 27–201 to 27–209 inclusive, 1952 Supp., A.C.A.1939, is not necessary to vest the court with jurisdiction to hear and determine the matter. Section 27–203, 1952 Supp., A.C.A.1939, after providing for consent of the parent or parents, guardian and a public or private welfare agency with authority to place children for adoption proceeds to provide, subsection (c) thereof, as follows:

"'An adoption may be decreed without the consent of the parent or legally appointed guardian when, after due hearing, the court shall determine that the interests of the child will be promoted thereby. In all such cases, the court shall make written findings of all facts upon which its determination is grounded.'

"The above quotation clearly vests the court with jurisdiction and power to decree the adoption of a child without the consent of the parents or legally appointed guardian. Their consent is not jurisdictional under the present law,

therefore the decision in Westerlund v. Croaff, 68 Ariz. 36, 198 P.2d 842, has no application under the law as now amended."

In Caruso v. Superior Court in and for the County of Pima, 100 Ariz. 167, 412 P.2d 463, we set forth the conditions required to give jurisdiction in an adoption case where consent was not given by the parents.

"Our Constitution grants to the Superior Court exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children and children under 18 years of age accused of crime. Art. 6, § 15. When exercising such jurisdiction, the Superior Court is referred to as the Juvenile Court. A.R.S. § 8–202, subsec. A. Proceedings may be initiated by a peace officer, probation officer, county resident or by the court itself. A.R.S. § 8–222. The court will conduct a preliminary investigation, as was done in this case, and if it determines that the child involved is dependent, neglected, incorrigible or delinquent, the court obtains formal jurisdiction over the child. It can thereafter make such order for the commitment, custody and care of the child as the child's welfare and the interests of the state require. A.R.S. § 8–231. The court has no jurisdiction to enter an order pursuant to A.R.S. § 8–231 until it first determines that the child is dependent, neglected, incorrigible or delinquent. In other words, the court cannot alter the custody or care of a child if that child is not dependent, neglected, incorrigible or delinquent.

In this case, the Juvenile Court found that the infant was dependent. Section 8–201, subsec. 5 defines a dependent child as follows:

"'Dependent child' includes a child who is homeless or destitute, or without proper support or care through no fault of his parent or guardian, and a child who lacks proper care by reason of the mental or physical condition of his parent, guardian or custodian.

"We have examined the evidence presented to the Juvenile Court and there is no evidence to support the determination that the child was dependent. * *

\* \* \* \* \* \*

"As a natural father, petitioner is entitled to the care, custody and control of his child against all others except the mother. In re Winn, 48 Ariz. 529, 63 P.2d 198. See A.R.S. § 14–846. She, of course, relinquished her rights. We will recognize petitioner's right to his child until his unfitness clearly appears or until it is shown by clear and convincing evidence that the child is dependent, neglected, incorrigible or delinquent. Application of Gault, supra; In re Winn, supra, Ward v. Ward, supra, [88 Ariz. 285, 356 P.2d 30]. Before the Juvenile Court can consider what disposition it can make in the best interest of the child, it must have jurisdiction. Jurisdiction in the Juvenile Court does not attach until there has been an adjudication based upon evidence that the child is dependent, neglected, incorrigible or delinquent."

While in Anderson, supra, we held the public welfare department could not give consent to the adoption, there was no question but what the court had jurisdiction, as the mother had given "written relinquishment" of her rights in the child. He was homeless and destitute, and without support and care, and therefore a dependent child under the statute. The question then was whether the court had jurisdiction to grant the adoption. Section 27–203, A.C.A., 1939, as amended, and the current § 8–104, A.R.S., are identical, permitting the court to grant an adoption without the legal consent of the parent or legally qualified guardian when "the court determines that the interests of the child will be promoted thereby." The court had jurisdiction to make this determination in Anderson, supra, because the facts showed that the child was dependent. When Westerlund

v. Croaff was decided, the court did not have such authority, and hence to that extent it was not applicable. The jurisdiction, in such cases, is made plain in Caruso, supra.

We are confronted with the question of whether § 8–104 gives a court jurisdiction to hear a case merely on allegations of a petitioner that the best interests of a child will be promoted by the adoption. Such an interpretation would make meaningless § 8–103, subsec. A, which provides:

"A. Before the court may enter an order for the adoption of a minor, the provisions of this section which are applicable to the proceeding shall be observed:

"1. Consent to the adoption shall be obtained from the individuals or agencies found capable of giving consent under the following circumstances:

"(a) The parents or surviving parent of the child, but if one of the parents has been legally declared insane or incompetent, consent need not be obtained from such person."

and would be a repeal of that section by implication.

In the case of State of Arizona, ex rel. E. Leigh Larson, v. Gordon Farley, Judge, and Shelley, Real Party in Interest, 106 Ariz. 119, 471 P.2d 731 (July 10, 1970), we held:

"* * * If the statutes relate to the same subject or have the same general purpose—that is, statutes which are in pari materia—they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law. As they must be construed as one system governed by one spirit and policy, the legislative intent therefor must be ascertained not alone from the literal meaning of the wording of the statutes but also from the view of the whole system

of related statutes. This rule of construction applies even where the statutes were enacted at different times, and contain no reference one to the other, * * *"

The reasonable construction of § 8–104, A.R.S., is that it was intended to permit the trial court to make its determination on the question of whether "the interests of the child will be promoted" when and after the court has determined it has jurisdiction. Any other interpretation would permit petitioners who merely observed a fine-looking child whose parents were not in good financial circumstances to apply for the adoption of the child on the theory that it would be to the best interests of the child to grant the adoption because they would be able to send him through college, and to give him better training than his natural parents could. We do not believe that such was the intention of the legislature.

The question then is whether under this construction the court had jurisdiction in the instant case. Such jurisdiction must be found from the petition, the pleadings of the natural mother, and the evidence in the case. The petitioners allege that:

"[the] father of the child is one * * * who has abandoned said minor child and who has completely failed to provide said child with any financial assistance whatsoever; that the mother of the child is one * * * who presently is incarcerated in the Arizona State Prison at Florence, Arizona, having been sentenced by Judge Thomas Tang of the Maricopa County Superior Court on January 25, 1966, to serve two consecutive terms of one to five years each, upon

her plea of guilty to two counts of writing checks upon an insufficient account.

"That from about the 25th day of October, 1965, the minor child has continuously been and is now in the custody of petitioners."

█ The natural mother filed a motion to dismiss the complaint on the basis that the father had died on May 9, 1967, and that she was the sole remaining parent of said child and entitled to the care, custody and control of said child, and that she had not given her consent to the adoption. She admitted that she was incarcerated in the Arizona State Penitentiary but stated she expected to be paroled in January 1969, and alleged that she was capable of providing for the interests and support of the minor child. The allegation of the petitioners that the father had abandoned the minor child and wilfully deserted and neglected the child and had failed to provide him with any financial assistance was not denied in the record, and the mother being in the penitentiary—no matter how good her intentions toward the child were —the fact remains that as far as the natural parents were concerned, neither had given him support or a home—home being the natural abode of love and affection which is essential to the well being of a child. We therefore hold that the allegations fall within the holding of Caruso, supra, and the definition of "dependent child" as set forth in A.R.S. § 8–201, subsec. 4, par. b and subsec. 5.[1] The court had jurisdiction to determine the question of the child's adoption. The court made its findings, and, although it failed to set forth a finding of dependency of the child, it did set forth facts which reasonably could have supported such a finding. In

1. § 8–201.
* * * * *
4. "Neglected child" includes:
* * * * *
(b) A child who lacks proper parental control by reason of the fault or habits of the parent, guardian or custodian.
* * * * *

5. "Dependent child" includes a child who is homeless or destitute, or without proper support or care through no fault of his parent or guardian, and a child who lacks proper care by reason of the mental or physical condition of his parent, guardian or custodian.

In re Holman's Adoption, 80 Ariz. 201, 295 P.2d 372, we held:

" * * * We have frequently held, however, that there is implied in every judgment a finding of fact in addition to express findings made by the court necessary to sustain the judgment if such additional findings are reasonably supported by the evidence and not in conflict with express findings. * * *"

The court made the finding that the best interests of the child would be promoted by permitting the petitioners to adopt him. We have frequently held that the appellate court will not disturb the findings of a trial court, even where there is a conflict of evidence, and will not reverse a case unless the findings were clearly erroneous. Bohmfalk v. Vaughan, 89 Ariz. 33, 357 P. 2d 617; Rossi v. Stewart, 90 Ariz. 207, 367 P.2d 242.

Where the evidence is in conflict, the Supreme Court will not substitute its own opinion for that of the trial court. Evidence will be taken in the strongest manner in favor of the findings of the trial court. A.N.S. Properties, Inc. v. Gough Industries, Inc., 102 Ariz. 180, 427 P.2d 131. The fact that this Court might have taken a contrary view of the facts in a case does not authorize a reversal of a judgment. Land-Air, Inc., v. Parker, 103 Ariz. 1, 435 P.2d 838. In the instant case, the child will be five years of age on October 19th of this year, and under the circumstances of the case we do not find any ground for reversing the decision of the trial court, and disturbing the custody of the child who has only known the petitioners as parents, as they have had custody of him since he was six days old.

Decision of the Court of Appeals vacated. Judgment of the Superior Court affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.