295 P.2d 372

**In the Matter of the Adoption of Katherine Anne HOLMAN, a Minor Child.**

No. 6115.

Supreme Court of Arizona.

March 27, 1956.

Alan Philip Bayham, Arthur B. Parsons, Jr., Phoenix, for appellant.

Anderson & Smith, Safford, for appellees.

PHELPS, Justice.

This is an appeal from an interlocutory order and decree of adoption of the above-named minor child adopted by Kenneth R. and Fay Foote.

The child is the daughter of one Anna Katherine Holman (now Thompson) and James H. Holman, Jr. The child will be hereinafter referred to as the baby and the mother and father will be referred to as the mother and father respectively and the adopting parties as the Footes, or if referred to singly, as Mr. or Mrs. Foote.

The baby was born at Phoenix on December 25, 1953, at which time the mother was a little over 16 years of age. The father had deserted the mother during pregnancy and divorce proceedings were instituted against him in September, 1953. The records disclose that the divorce was granted on March 6, 1954. Previously the father had been required to pay the mother $60 per month. He paid only a part of the amount required up to November and has since then paid nothing either for the support of the mother or the baby. On September 1, 1954, the mother married one Richard J. Thompson with whom she was living at the time of the hearing on the petition for adoption on April 11, 1955.

The mother had no means of support after November, 1953, until she married Thompson except a small amount she earned while working for a few weeks in a TV shop operated by her brother. Because her stepfather objected, she was not permitted to live with her mother. There is a conflict in the evidence as to where the baby was kept during the first couple of months of her life but we think it is immaterial. Suffice it to say that a few weeks prior to April 23, 1954, when she was surrendered to the Footes for adoption by the written consent of the mother and grandmother, she was in the care and custody of one Eileen Whitmore under an agreement with its mother to pay her therefor the sum of $10 per week. The mother paid all she was able to pay for this service but the Footes paid Mrs. Whitmore a balance of $50 at the time they took the baby into their custody. The written consent signed

by the mother contained a clause providing that the Footes may take the baby to California where they were employed at a naval ordnance test station, and apply for adoption there, or in any other jurisdiction they saw fit.

The Footes immediately left for California and after investigating through legal channels, found they would have to institute adoption proceedings in Arizona. This they did on June 14, 1954, by filing a petition for adoption in the superior court of Greenlee County where they were both born and where they intended to live after he completed his service with the United States Government.

On August 16, 1954, the mother filed an application in the above cause of action for the appointment of a guardian ad litem for her but did not disclose in such petition whether the appointment was sought for the purpose of aiding in the adoption of the baby or to oppose it. The matter was not pursued further but on October 5, 1954, the mother filed an instrument under oath in the adoption proceedings designated as "Withdrawal of Purported Consent and Specific Objection" in which she averred that the undue influence of her mother had caused her to consent to the adoption of the baby by the Footes and purported to withdraw said consent and asked for the custody of the baby and dismissal of the petition for adoption; that on the same day her husband, Richard J. Thompson, filed another instrument under oath as next friend

of the mother which is in substance the same as that filed by the mother.

On August 17 James H. Holman, Jr., the natural father of said baby, filed a motion to have the case transferred to Maricopa County and on September 1 following, filed a response to the petition for adoption and a motion to dismiss the petition for lack of consent by him. This matter was pursued no further by him and he did not appear at the hearing either in person or by counsel.

The cause came on for hearing on April 11, 1955. Both the Footes and the mother were present and represented by counsel. Evidence was introduced on behalf of both parties to the litigation and the matter was taken under advisement by the court. Thereafter on May 31, the court being fully advised in the premises, made amended findings of fact and conclusions of law insofar as here material, as follows: found as a fact that the mother was urged by her mother to let the baby be adopted but that the persuasion of the mother did not amount to undue influence or coercion and that the signing of the consent was a voluntary, deliberate and considered act of the mother. It further found that both the natural mother and her husband and the Footes were fit and proper persons to have the care, custody and control of the baby; that there was no agreement or understanding between the mother and the Footes before the consent was signed that the mother could get the child back any time she desired

within a year from the date of the written consent. It did not expressly find as a fact that in its judgment it would be for the best interest of the baby to permit its adoption by the Footes. We will, however, undertake to show that this finding was implied from the judgment rendered.

As conclusions of law the court found in part that there was no undue influence or coercion exercised over the mother by her mother; that there was no valid or legal contract made between the mother and the Footes upon which the withdrawal of the mother's consent could be based, and that the written consent executed by the mother was valid and legal and that once given and acted upon by the Footes, could not be withdrawn or revoked without legal cause and thereupon entered its interlocutory order of adoption thereon, authorizing the Footes to adopt said baby which order should become final upon the expiration of one year therefrom conditioned upon a proper and satisfactory showing at that time by the Footes.

The mother has presented three assignments of error based upon the court's refusal to dismiss the adoption petition, which, when boiled down to its final analysis, present three questions:

1. Was the written consent to the adoption filed by the mother on the 23rd of April, 1954, subject to revocation?

2. If so, was it necessary for the court to make a finding in this case that it would be for the best interest of the child to order its adoption by the Footes?

3. Is the law constitutional?

The crux of the case is, can the natural parents or mother of a child who voluntarily and deliberately give their consent to the adoption of their baby by another and deliver to the proposed adoptive parents the care, custody and control of the baby, thereafter, without legal cause shown, revoke such consent and defeat the adoption of the baby?

The courts are divided upon this question, and all agree that because of the difference in the statutes on adoption in the various states, the decisions of other courts are not too helpful. The statutes of all the states which we have examined require the written consent of the natural parents if living, with certain exceptions, as in the case of abandonment or failure to provide for such child for the specific period named therein, etc. This period also varies in different states.

In In re Adoption of Cannon, 243 Iowa 828, 53 N.W.2d 877, 880, decided in 1952, the court held that the father could not withdraw his consent for his child to be adopted and therefore as between him and his wife she was entitled to its custody when the adoptive parents withdrew their application to adopt. The court said:

"Whether there may sometimes be circumstances sufficient to justify such

a withdrawal or what they might be, we need not and do not now determine. We are agreed the right is not absolute and that the situation here precludes any assertion of it.

\*    \*    \*    \*    \*    \*

"Neither objector here pays any attention to the question of the child's interest. They both stand apparently upon the naked legal proposition that a parent may encourage and give written consent to an adoption and thereafter, before the adoption is fully consummated, arbitrarily change his mind and, without stating any reason, figuratively speaking 'pull the rug from under' petitioner, court and child, and prevent consummation. Such interpretation of our statutes is unthinkable."

The court further said:

"The value of a discussion of cases from other jurisdictions is doubtful. Statutes and circumstances usually differ. Both sides on appeal were compelled however to go abroad for support of their respective theses. The trial court did likewise."

The court then cites an annotation found in 156 A.L.R. 1011 to the effect that the trend of the more recent authorities is toward the position that where a natural parent freely and knowingly gives the required consent, it may not be withdrawn. Washington has a statute expressly authorizing a mother to withdraw her consent at any time before a final decree of adoption. Tennessee has a statute prohibiting withdrawal of consent after entry of interlocutory decree. California has a statute to the effect that consent once given may not be withdrawn without approval of the court. There are perhaps other states having statutory provisions on this phase of the adoption proceeding but the cases cited here are from jurisdictions where no such statutory provision exists.

█ In In re Adoption of Morrison, 260 Wis. 50, 49 N.W.2d 759, 763, 51 N.W.2d 713, decided in 1951, the court held a mother could not revoke her consent to the adoption of her baby merely because she was a minor. The state of Wisconsin, however, provides that minority was not a ground for withdrawal of consent. The court stated, quoting from 1 Am.Jur., Adoptions, Sec. 4, p. 623, that:

" 'The welfare of the child is the primary consideration in the determination of an application for adoption. On this point there is unanimous agreement. *And it has been stated broadly that in a proceeding for adoption the court may ignore the natural rights of the parent if, in so doing, the child's welfare is promoted.* \*    \*    \*' "

This court has been fully in accord with this pronouncement since the case of Rizo v. Burruel, 23 Ariz. 137, 202 P. 234, 19 A.L.R. 823. See also In re Clough, 28

Ariz. 204, 236 P. 700; Westerlund v. Croaff, 68 Ariz. 36, 198 P.2d 842; Anderson v. Pima County Dept. of Public Welfare, 77 Ariz. 339, 271 P.2d 834. Section 27–203 (c), 1952 Cum.Supp. A.C.A.1939 [A.R.S. §§ 8–103, 8–104], expressly provides that the consent of the parent is not necessary if the court shall determine after due hearing that the best interests of the child will be promoted by its adoption and that in all such cases the court shall make written findings of facts upon which its determination was grounded. The Wisconsin court stated that a parent has no vested right which requires the protection accorded to property rights. It quoted Dean Roscoe Pound in his "The Spirit of the Common Law" as follows:

"'* * * *The individual interest of parents which used to be the one thing regarded has come to be almost the last thing regarded as compared with the interest of the child and the interest of society. * * ***"*

█ In In re Adoption of a Minor, 1944, 79 U.S.App.D.C. 191, 144 F.2d 644, 647, 156 A.L.R. 1001, wherein the court held that the natural parents consent to the adoption of a child once given may not be withdrawn, it had under consideration a statute similar to our own. The act of Congress under which this proceeding was held provided for the consent of the natural parents except under certain conditions like many other adoption statutes. The act, like our own, provided that: "'The con-

sent of a parent who is a minor shall not be voidable because of that minority.'" Our statute, section 27–203 (b), 1952 Cum. Supp. A.C.A.1939, provides that:

"The minority of a child or of a parent shall not affect competency to give consent in the situations defined in subsection (a). * * ***"*

This subsection provides when and how consent shall be given. The Federal Court referred to this provision as proof certain that Congress did not intend that a parent may revoke its consent once it had been freely given. It said:

"It is inconceivable that Congress— with prevision of such efforts to avoid parental consent and while forbidding, specifically, a method of avoidance favored in the law above all others— could possibly, at the same time, have contemplated *unrestricted withdrawal of consent without cause or reason of any kind. * * ***"*

We think the reasoning of the court is sound. It is the policy of the law to shield those who by reason of their age, immaturity of mind and lack of experience from being imposed upon by the unscrupulous. The removal of this mantle of protection in the adoption statute by expressly providing that minority of a parent shall not affect the competency of such parent to consent to adoption when the law relieves minors from liability in all other cases where promises are made or obliga-

tions assumed admits of but one construction and that is that consent to adoption once given is irrevocable except for legal cause. This seems to be the manifest intent of the legislature in this state.

That consent to the adoption of a child once given cannot be revoked is also the holding in Bailey v. Mars, 138 Conn. 593, 87 A.2d 388; Sessions v. Oliver, 204 Ga. 425, 50 S.E. 54; Wyness v. Crowley, 292 Mass. 459, 198 N.E. 924, and many others. See also Supp., 2 C.J.S., Adoption of Children, § 21, p. 386, and Annotation, 156 A.L. R. 1011.

■ The direct question of whether this consent is revocable is of first impression in this court. In view of our holding, however, that the best interest of the child is the paramount consideration of the court and in view of our interpretation of section 27–203, supra, relating to consent we hold that a consent once given by the parent or other persons having the authority to give such consent, may not be revoked *after the child has been placed in the possession of the adoptive parents except for legal cause shown,* as where such consent was procured through fraud, undue influence, coercion or other improper methods. Provided always, however, that the court may permit said revocation where upon hearing, it is shown that it will be for the best interest of the child that it be returned to its natural parents. Or if there are no parents, if it appears upon hearing that the best interest of the child will not

be promoted by its adoption by the proposed adoptive parents, the adoption will be denied.

■ Bearing this in mind, what do the facts and circumstances in this particular case indicate to be for the best interest of the child? The lower court found, both as a fact and as a conclusion of law, that the mother's consent was given freely, voluntarily and after due consideration and also that she was not under any undue influence from her mother. The evidence is in conflict upon this point but there is substantial evidence to support the finding and it will therefore not be disturbed.

The court further found there was no agreement between the mother and the adoptive parents that she could have the baby returned to her within a year if she desired. There is no dispute in the evidence to the effect that when the mother told the adoptive parents that under the law she could get the baby back at any time within a year, she was then told by Mr. Foote that they would not consider its adoption under any circumstances unless she would give it to them to keep forever and she then assured him that the baby was theirs forever.

■ The court further found that both the mother and her present husband and the adoptive parents were fit and proper persons to have care, custody and control of the baby and in ordering and decreeing

its adoption by the Footes it made no express finding that this would be for the best interest of the child. It will be observed, as above pointed out, that our statute only makes it mandatory that such a finding be made where no consent is given by the parent. In the instant case consent was given and we are holding that it was irrevocable, except for the reasons herein stated. We have frequently held, however, that there is implied in every judgment a finding of fact in addition to express findings made by the court necessary to sustain the judgment if such additional findings are reasonably supported by the evidence and not in conflict with express findings. Hagen v. Cosper, 37 Ariz. 209, 292 P. 1020; Welker & Clifford v. Merrill, 32 Ariz. 90, 255 P. 991. There is substantial evidence in the record to support such an implied finding and it does not conflict with the finding that both the mother and her husband and the Footes are fit and proper persons to have the custody, control and care of the baby. This by no means can be construed to mean that the best interest of the child will be promoted by returning the baby to its mother.

■ While our adoption statutes do not make it mandatory on the trial judge to make written findings as to what will be for the best interest of the child except where no consent at all has been given, for future guidance of the courts in view of the above conclusion we believe the better practice for the trial court would be to make an express finding as to where the best interest of the child lies, in all cases.

We do not consider that assignment of error No. 3 attacking the constitutionality of the law is deserving of consideration here because it is based upon the provisions of section 27–304, A.C.A.1939 [A.R.S. § 12–1504], providing for the adoption of a child without the consent of the parents in certain cases. That question is not involved in this case.

The judgment of the lower court is affirmed.

LA PRADE, C. J., and UDALL, WINDES and STRUCKMEYER, JJ., concur.