414 P.2d 176

**In the Matter of the ADOPTION OF Baby Girl LUKE.**

**Maurice E. HUNT and Ernestine W. Hunt, Appellants,**

**v.**

**The Honorable John F. MOLLOY, Judge of the Superior Court, Pima County and Lyman C. Foster, Chief Probation Officer, Pima County Juvenile Court, Appellees.***

**2 CA–CIV 256.**

Court of Appeals of Arizona.

May 17, 1966.

Rehearing Denied June 14, 1966.
Review Denied Sept. 27, 1966.

See also 3 Ariz.App. 351, 414 P.2d 435.

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8314. The matter was referred to

this court pursuant to A.R.S. Section 12–120.23.

**328**

Lesher, Scruggs, Rucker, Kimble & Lindamood, by D. Thompson Slutes, Tucson, for appellants.

Darrell F. Smith, Atty. Gen., Philip M. Haggerty, Asst. Atty. Gen., Phoenix, for appellees.

HATHAWAY, Judge.

This is an appeal from a Pima county superior court order denying the appellants' petition to adopt a minor child, Kristina. The order constituted a revocation of the interlocutory adoption order previously entered.

Kristina was born on March 8, 1962, in Tucson, Arizona. Her natural mother executed a document wherein she relinquished all parental rights to the child and consented to the child's adoption by the Hunts. The baby girl was delivered into the custody of Dr. and Mrs. Hunt. Thereafter on February 20, 1963, the appellants petitioned the court for leave to adopt the child and on May 23, 1963 an interlocutory order of adoption was entered.

A series of events subsequently transpired concerning the abuse of Ernestina ("Tina"), another child previously adopted by the appellants, and criminal proceedings were instituted against them as a consequence thereof, State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208. After extended hearings and inquiries into varied aspects of appellants' circumstances and intra-familial relationships, the lower court entered the order which is the subject of this appeal.[1]

Our adoption statutes, A.R.S. §§ 8–101 et seq., provide that the court shall make an interlocutory order if satisfied that the interests of the child will be promoted by the adoption. Prerequisite to the issuance of the final order is that the child shall have lived one year after the entry of the interlocutory order in the home of the petitioners, and the court for good cause may revoke its interlocutory order at any time before entry of the final order. A.R.S. § 8–107. The interlocutory order is provisional only and may be vacated prior to entry of the final order, and until entry of the final order, the child is a ward of the court. A.R.S. § 8–108 as amended.

Appellants claim that the mother's written relinquishment of parental rights and consignment of the child to their care placed

---

1. A.R.S. § 8–110 provides:
    "A petitioner, parent, guardian or other person having an interest in the adoption of a child, may appeal to the supreme court from the granting or refusal of either the interlocutory or final order of adoption as in other appeals, and the child adopted may, by its duly appointed guardian, appeal in like manner."

them in the mother's shoes and therefore their rights to custody are derivatively as strong as the mother's. They argue that a natural parent may surrender custody of her child and the one seeking to remove the child from the custodian must sustain the same burden of proof required in an attempted removal of the child from parental custody. We need not consider this argument since custody was not adjudicated in the adoption proceedings and therefore is not before us in this appeal.[2]

The sole question presented for our determination is the correctness of the lower court's revocation of the interlocutory order of adoption. At the outset we note that the written relinquishment of the mother's parental rights did not confer upon the appellants an advantage denied other adoptive parents. The consent of the child's mother is required before the superior court may enter an order for adoption. A.R.S. § 8–103, subsec. A(1) as amended.[3] Such consent is a jurisdictional prerequisite to a valid adoption. See Westerlund v. Croaff, 68 Ariz. 36, 41, 198 P.2d 842 (1948). Furthermore, until the final order of adoption is entered, a minor child is still the child of the natural parents; it is only the final order which vests and divests legal rights and duties. In re Adoption of Wilcox, 68 Ariz. 209, 213, 204 P.2d 168 (1949). As pointed out in the *Wilcox* case:

> "It seems clear that in providing for this one-year probationary period, during which time the child to be adopted was to live with the adoptive parents, the legislature imposed a safeguard aimed at determining with some certainty that the child's best interests would be promoted by the adoption." 68 Ariz. at 212, 204 P.2d at 169.

The lower court in its order herein being considered recited that "it is in the best interests of said child that said petition be denied." The welfare of the child is the primary consideration of a court in passing upon an application for adoption. In re Holman's Adoption, 80 Ariz. 201, 206, 295 P.2d 372 (1956). The trial judge is in the best position to determine whether the child's best interests will be subserved by the adoption and we, as a reviewing court, will not interfere with the exercise of his discretion unless a clear abuse is manifested.

Numerous lay witnesses testified to the effect that Kristina was happy in the family circle and would be adversely affected if removed therefrom. Other witnesses, experienced in the field of child welfare, expressed doubts as to the advisability of allowing Kristina to remain in an environment which contained a potential risk of harm to her.

The adoption examiner stated that she felt "that the environment is dangerous." The director of child care at the Arizona Children's Home, who had been engaged in child welfare work for thirty years, when questioned about her recommendations concerning Kristina, stated:

> "Well, there hasn't been any evidence that Ernestina was not beaten, and I feel that if a mother could beat a child this way that it isn't safe for another child to be there. * * *. and I quite agree with anything that has been said about the trauma and about taking a two year old child, practically a two year old child, from a parent, and I don't think it is something that should be done lightly, but if the one child was beaten and cruelly treated, then my feeling is how can we trust that a second time with this other child, how can we trust that to a sick mind, this child, and know that a sick mind won't do it again."

---

2. The minor child was removed from appellants' custody by virtue of juvenile court proceedings wherein the child was declared to be a neglected and dependent minor child.

3. Parental consent is unnecessary when, after hearing, the court determines that the interests of the child will be promoted thereby. A.R.S. § 8–104. However, the court is then required to make written findings of all facts upon which the adoption order is founded.

This witness also testified that the child could be placed in another home within two or three weeks. The child however, as indicated by medical testimony, required heart surgery, and it was suggested that the surgery be performed prior to placing the child in an adoptive home.

A psychiatrist who had interviewed Mrs. Hunt and submitted her to a series of psychological tests, testified concerning his evaluation based on these interviews and tests. Although he found no evidence of psychoses, sadistic orientation, or severe character disorder, he adamantly declined to predict as to the possibility of future harm to Kristina if allowed to remain in the Hunt home. When asked whether Mrs. Hunt's personality pattern of rigidity and repression might manifest itself in a future relationship with Kristina, the doctor stated:

> "I don't know whether this would be any major amount of difficulty because of this absolute character as to Mrs. Hunt's thinking. I would say this, I think that this sort of orientation towards life certainly has a tendency to cause difficulty or to cause difficulties to come forth for a person and to some extent to cause difficulties to come forth to the people with whom they are associated, but how much difficulty that could create in the relationship with Kristina I don't know."

We believe that there is sufficient evidentiary support for the lower court's finding that it would be in the best interests of the minor child to deny the appellants' petition for adoption. Such finding satisfies the "good cause" requirement of A.R.S. § 8–107, subsec. B for revocation of an interlocutory order of adoption. See 2 C.J.S. Adoption of Children § 47b.

The order appealed from is accordingly affirmed.

KRUCKER, C. J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JOHN F. MOLLOY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.