530 P.2d 896

**ANONYMOUS, Appellant,**

**v.**

**ANONYMOUS, Appellee.**

**Nos. I CA–CIV 2634, I CA–CIV 2613.**

Court of Appeals of Arizona,
Division 1,
Department C.

Jan. 16, 1975.

Wykoff, Charles, Schnulo & Coffinger, by Joseph W. Charles, Glendale, for appellant.

Porter, Stahnke & Phillips by Bernald C. Porter, Tempe, for appellees.

## OPINION

WREN, Judge.

The singular question presented on this appeal is whether appellant's consent to the adoption of her baby was given under duress. We believe that it was not and therefore affirm the order of the trial court denying appellant's petition for revocation of consent and quashing her petition for writ of habeas corpus.

The facts necessary for our consideration of this appeal are as follows. Appellant was unmarried at the time she became pregnant in July of 1972. She did not then divulge her condition to her parents or to the natural father of the unborn child, who was married and had returned to his wife and family. Through a physician, Dr. Arthur O'Connor, appellant learned of a couple who was desirous of adopting a baby. The doctor answered her questions concerning the couple, and she then indicated her desire to place the child with them. Though appellant was encouraged by the doctor to tell her parents of her pregnancy, she was adamant that they not be informed. To further conceal the birth she went to her sister's home in California in December, and remained there until the infant was born in April of 1973.

Appellant gave written consent to the adoption at her sister's home, three days after the child's birth, and did so in the presence of her sister, an attorney representing the adoptive couple and a nurse. Three months later she brought this action to revoke her consent and recover her baby.

The relevant statute as to time of execution and requisites of consent to adoption is A.R.S. § 8–107, which states in pertinent part:

"A. All consents to adoption shall be in writing and signed by the person giving the consent . . ..

"B. A consent given before seventy-two hours after the birth of the child is invalid."

Appellant does not contend that the provisions of this statute were not complied with. The consent form was signed by her approximately seventy-seven hours after the birth of the child. She does contend however, that her consent was not, as the trial court found, freely and voluntarily given, but rather was made under duress. Appellant argues that she would not have signed the release if she had not been: (1) depressed; (2) weakened by the recent delivery; (3) confused by heavy medication; (4) pressured by an official of her church; (5) pressured by an attorney representing the adoptive parents; (6) misinformed regarding the finality of her signature.

In Lundvall v. Hughes, 49 Ariz. 264, 267, 65 P.2d 1377, 1378 (1937), duress was defined as:

"(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

"(b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will

and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement."

Initially, we note that we are not dealing here with an immature person. The appellant was 25 years of age, and a woman of considerable sophistication at the time she consented to release her child. She was a high school graduate and had received one year of collegiate education. For approximately five years prior to the time of this occurrence she had worked as an inhalation therapist. Further, appellant had more than eight months after learning of her pregnancy in which to ponder her course, and during that time was given a great deal of advice and made aware of various alternatives.

At the first meeting with Dr. O'Connor, he posed the alternative of abortion, which she rejected because of her religious convictions. After expressing to the doctor a desire to place the baby for adoption, appellant never, during the remaining period of her pregnancy, indicated any unwillingness to proceed further with the adoptive release. Further, she discussed the proposed adoption with her older sister and the natural father of the infant whom she finally told of her pregnancy after traveling to California. He encouraged her to do what she thought was best, and in addition, offered financial assistance. Following the birth of the child, a church official counseled her while she was in the hospital. Though appellant never informed her parents of the pregnancy, they finally learned of it on the day the baby was born, and told her it would be all right to return home with the baby; that it was her decision to make and they would stand behind her no matter what she did.

▪ It was not, as suggested by appellant, incumbent on the attorneys representing the adoptive parents to inform her of the alternatives. There is no substantial evidence showing that she was misled or coerced into the adoption by them, or that there was any knowledge on their part that appellant was other than desirous of releasing her child for adoptive purposes. The record in fact is completely void of evidence showing that appellant's decision was made other than upon reflective deliberation, with due consideration of the advice given her, and armed with knowledge of the alternatives available to her.

▪ We turn now to the specific points alleged by appellant as showing duress. First, the fact that the appellant was weakened by her recent delivery and depressed, as all women would be under similar circumstances, does not constitute duress. *See* In re Simaner's Petition, 16 Ill.App.2d 48, 147 N.E.2d 419 (1957).

▪ Likewise, her argument that she was confused by medication, an empirin compound with codeine and seconal, taken approximately three hours before giving her consent, must also fail. Medical testimony presented by three physicians was to the effect that these drugs which would relieve pain and induce rest and sleep, would not have prevented the appellant from making a deliberate, intentional, and voluntary decision to sign the consent form, even assuming her then existing physical and emotional condition. Moreover, the attorney who obtained the appellant's signature on the release form testified that she did not appear to be sedated, but rather, was alert and aware of who he was and why he was there. Indeed, appellant had spoken on the telephone to the attorney within the preceding half-hour, and had given him directions on how to get to her sister's home. Though contrary medical testimony was offered by appellant on the effect of the medication, it merely created a conflict for the trial court to resolve, and its determination that the consent was knowingly and voluntarily given is, we believe, amply supported by the evidence.

▪ Nor does the record support appellant's contention that the church official who counseled her in the hospital exerted any pressure that would constitute duress. He merely emphasized the various aspects of her situation, and advised that she re-

lease the baby for adoption. She acknowledged that he mentioned nothing that she had not already considered herself. Mere advice, whether acted upon or not, does not constitute duress. People v. Catholic Home Bureau, 34 Ill.2d 84, 213 N.E.2d 507 (1966); In re Adoption of Giambrone, 262 So.2d 566 (La.App.1972).

Equally untenable is the assertion that pressure was exerted by an attorney representing the adopting couple. The only evidence we find on this point is testimony by appellant corroborated by her sister, that at the time she was giving directions over the phone to the attorney on how to get to her sister's home, she asked him, "Does this have to be done today?" to which, according to her testimony, he replied, "Yes". The attorney could not recall that question being asked of him, but related that he had told the person with whom he had spoken on the phone that he would like to come over and have appellant sign the consent to adoption. Appellant's testimony, assuming its complete truth, falls far short in our opinion, of showing that at the time she released her child for adoption, she was acting under duress.

Finally, her contention that she was misinformed as to the finality of her signature is likewise without merit. She testified that at the time she signed the release, she was under the impression that she could revoke her consent at any time within the following six months. Such an impression clearly was not created by any conduct on the part of the adoptive parents or their counsel. Appellant acknowledges receiving a copy of the Consent to Adoption form in February, 1973, two months before the baby's birth. She admits reading it on at least two occasions. It contained nothing to indicate that her assent would be other than irrevocable.

Moreover, appellant never questioned the attorneys about the finality of her signature even when they solicited questions from her concerning the release and adoption. In fact, at the time she signed the document, she was told by one of the attorneys that her signature would authorize the transportation of her child to the adoptive parents. Yet as the record reflects, she still had no questions.

The misconception of a six month moratorium on the finality of an adoption release has heretofore been before this court. In Acedo v. State, Department of Public Welfare, 20 Ariz.App. 467, 513 P.2d 1350 (1973), we held that where the mother of a child voluntarily executed a consent to adoption, she could not regain custody of her child, even though she was under the mistaken impression that she could change her mind at any time within six months. Approving the policy considerations expressed by the Nevada Supreme Court in Welfare Division of Department of Health and Welfare v. Maynard, 84 Nev. 525, 445 P.2d 153 (1968), we quoted:

"'It is apparent that if in particular cases the unstable whims and fancies of natural mothers were permitted, first, to put in motion all the flow of parental love and expenditure of time, energy and money which is involved in adoption, and then, as casually, put the whole process in reverse, the major purpose of the statute would be largely defeated.'

\*       \*       \*       \*       \*       \*

"'Public policy demands that the adoption act should not be nullified by a decision that causes the public to fear the consequences of adopting a child with the full knowledge that their efforts are at the whim and caprice of a natural parent.'" 20 Ariz.App. at 471, 513 P.2d at 1354.

*Acedo* went on to state:

"To allow the efforts and expectations produced by, and flowing from, petitioner's conduct to be destroyed by her unexpressed misconception which was neither the result of actions by the adoption agency nor the adoptive parents, would be contrary to the public policy manifested by our adoption statutes. The continued integrity of the adoption procedure demands that a consentor be held to the

**54**

natural consequences of his or her actions, absent the presence of highly important countervailing policy considerations as discussed in Holman, *supra* [In re Holman's Adoption, 80 Ariz. 201, 295 P.2d 372]." 20 Ariz.App. at 471, 513 P.2d 1354.

In In re Holman's Adoption, 80 Ariz. 201, 207, 295 P.2d 372, 376 (1956), it was noted:

> ". . . that a consent once given by the parent or other persons having the authority to give such consent, may not be revoked *after the child has been placed in the possession of the adoptive parents except for legal cause shown,* as where such consent was procured through fraud, undue influence, coercion or other improper methods." (Emphasis in original).

The only reinforcement to her position that the misimpression was created by conduct on the part of the attorney representing the adoptive parents is testimony by appellant, corroborated by her sister, that at the time she signed the consent form the sister told appellant, "Don't worry, I don't think this makes it final." They both testified that the attorney did not respond. Appellant testified that both she and her sister who was sitting next to her, were crying at the time, and that her sister's words were spoken very softly. The attorney testified that he never heard the statement, and that if he had he would have immediately corrected the misunderstanding.

Whether the comment was made, or if made, whether it was inaudible to the attorney, was for the determination of the trial court. The evidence reasonably supports the conclusion that there was no improper or fraudulent conduct on the part of counsel. Appellant's mistaken impression regarding the finality of her signature, not being created by the adoptive parents or by their attorneys, is insufficient to revoke her consent. Holman, *supra*; Acedo, *supra*; In re Adoption of Hammer, 15 Ariz.App. 196, 487 P.2d 417 (1971).

We are compelled to the conclusion that consent to the adoption was given freely and voluntarily, and that it was not procured by fraud, duress or undue influence. Appellant obviously believed at the time thereof, that she was doing what was best for her child. Her subsequent change of mind cannot constitute a revocation of the adoptive process.

The judgment is affirmed.

NELSON, P. J., and FROEB, J., concur.