831 P.2d 368

In the Matter of the Appeal in NAVAJO
COUNTY JUVENILE ACTION
NO. JA–691.

No. 1 CA–JV 90–035.

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 12, 1991.

Grant of Review Vacated,
Review Denied June 18, 1992.*

---

* Martone, J., of the Supreme Court, dissented
from order vacating grant of review and deny-   ing review.

Davis & Martin by David J. Martin, Show Low, for appellant.

Dale K. Patton, Jr., Winslow, for appellee.

Fennemore Craig, P.C. by C. Webb Crockett, Phoenix, for intervenor LDS Social Services.

## OPINION

KLEINSCHMIDT, Judge.

This is an appeal from the trial court's denial of a petition to set aside an order for the adoption of three children. We affirm the order of the trial court. The facts and the history of the case are as follows.

The appellant is the natural mother of three children whose adoption is the subject of this case. In June of 1986, she and the children's father separated, and the children lived with her. The father provided no financial support, and the appellant, who worked as a waitress, had serious problems earning a living and caring for the children at the same time.

In the fall of 1986, the appellant and the children were facing eviction from their apartment. The appellant arranged to stay with friends, and for several days, the children lived with a woman who cared for foster children. When this woman proved unequal to the task, the appellant contacted the Arizona Department of Economic Security, which placed the two older children in the Mesa Crisis Center. Shortly thereafter, the appellant agreed with DES that the two children could be placed in foster care for ninety days.

As the end of the ninety days of foster care neared, the appellant requested DES to extend the children's foster care beyond that time. This would have required the state to file dependency proceedings. When the DES case worker told the appellant that the state had no grounds to file dependency proceedings, the appellant told him that she was considering giving the children up for adoption.

In January 1987, an arrangement was made for the two oldest children to live with one of their uncles and his family and for the youngest child to live with another uncle and his family. While these arrangements were being made, the appellant revealed that she had explored the possibility of allowing a couple she was acquainted with to adopt the youngest child under an arrangement which would allow the appellant to visit her periodically. This did not work out, and in subsequent conversations with the DES case worker and family members, the appellant said that she planned to give the children up for adoption.

In late January 1987, the appellant met with Larry Draughon, an employee of LDS Social Services. She told Draughon that she wanted to place the three children for adoption. She also contacted the father of the children, and he executed relinquishments of his parental rights.

On February 9, 1987, the appellant, accompanied by her sister-in-law, went to the LDS Social Services office to sign adoption papers. Draughon told her that it would be better if the children stayed in the prospective adoptive home on a foster care basis before a final decision was made. The next day, the appellant executed foster care papers, and all three children were placed with a single prospective adoptive family.

On March 24, 1987, the appellant, accompanied by another of her children, a teenage daughter, went to LDS Social Services to sign the papers relinquishing her right to the three children. In the preceding six weeks that the children had been with the foster family, the appellant had little contact with LDS Social Services and never

indicated that she did not want the children adopted.

In her brief, the appellant asserts that she signed the adoption papers because she believed that if she did not, foster care would be terminated. She testified that she went to the LDS Social Services office in response to an insistent phone call that she come in and sign some papers. She testified that since the foster care agreement was terminable, she thought that LDS Social Services was going to treat her just as the state had treated her earlier and insist that she make other arrangements for the care of the children. Under these circumstances, which she asserts amount to duress, she agreed to give up the children.

The LDS Social Services worker, Larry Draughon, testified that he did not call the appellant on March 24 and insist that she come in and sign the papers. He denied that he put any pressure on the appellant or did anything to lead her to believe that if she did not agree to the adoption, foster care for the children would be terminated. He read the papers to the appellant. They included a clause which said:

> I am signing this consent to give my permission for LDS Social Services to place this child for adoption.... and that by signing this consent I will be giving up all my rights to this child, including the right to custody, care, control and visitation.... I understand this consent is irrevocable and that I cannot change my mind.

According to Draughon, the appellant was emotionally upset, but she acknowledged that she understood the documents and was signing them of her own free will. A petition to adopt the children was filed in late August 1987.

Sometime after she signed the papers, the appellant decided that she had made a mistake. According to her testimony, she took no action until September 1987 because she thought any attempt to regain the children would be fruitless, and because she could not pay for legal services. She encountered some resistance from LDS Social Services in getting copies of what she had signed, but by letter of September 21, 1987, Draughon did send copies to her, and he referred any further questions she might have to the agency's attorney. The appellant wrote to the agency's attorney on September 25, asking that further proceedings with respect to the adoptions be stopped and that further communication be initiated. The attorney did not respond to this letter.

By the time the appellant made known that she was having second thoughts, the petition for adoption had been filed. A hearing on the petition was set for February 23, 1988. At that hearing, no one told the judge that the appellant had changed her mind and did not want to relinquish the children. The court granted the petition for adoption. Thereafter, the appellant filed her "Petition to Set Aside the Consent to Adopt," which is the subject of this appeal.

The trial court held a hearing on the petition, after which it denied the petition and made the following findings.

This matter having been under advisement, this Court concludes:

1. The party seeking to set aside an adoption must prove by clear and convincing evidence the grounds to do so, in this case that her consent was obtained by fraud, duress or undue influence.

2. In the instant case, none of the actions of LDS Social Services or Tony Draughon, a representative of LDS Social Services, were of such nature as to cause duress of [the mother] in the legal sense, nor was fraud or undue influence shown.

3. Taking the evidence and testimony in the light most favorable to [the mother], there was simply a chain of circumstances leading to the relinquishment of her parental rights. None of these circumstances taken individually or collectively are sufficient to rise to the level of the necessary degree of proof produced by [the mother]. In fact, the cases cited by counsel for the State cover every circumstance argued by [the mother], to be in the nature of duress and, in fact, each

case cited falls squarely within the factual nature of the instant case.

4. Cases of this nature are the most difficult of all for the Court, for the attorneys, and particularly for the parents, both natural and adoptive. Because of this, the Court adopts the tenet of law that the best interest of the children must be a consideration. While there is some case law in Arizona regarding the Court considering the best interest (welfare) of the children in reaching a decision, this has not been the measure in cases of this nature. In this case, based upon the Court's familiarity with the facts of the adoption, the circumstances of the present home of the children, the length of time passed since the relinquishment, and the circumstances of the natural parents, it is the specific finding by this Court that it is in the best interest of the children and their welfare that the relinquishment and adoption not be set aside, and further, that the relinquishment was not obtained by fraud, duress or undue influence.

## DURESS

Under Arizona law, the grounds for setting aside a consent to adopt are very restricted. Arizona Revised Statutes § 8–106(E) provides: "A consent to adopt is irrevocable unless obtained by fraud, duress, or undue influence."

■ The appellant argues that she consented to the adoption under duress. Duress sufficient to set aside the consent to adoption would require proof of:

[a] wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or ... any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement.

*Anonymous v. Anonymous,* 23 Ariz.App. 50, 51–52, 530 P.2d 896 (1975) (quoting

*Lundvall v. Hughes,* 49 Ariz. 264, 267, 65 P.2d 1377, 1378 (1937)).

■ In arguing that she acted under duress, the appellant points to her testimony that she was upset at the time she signed the papers and believed that if she did not agree to the adoption, foster care for her children would terminate. There are two problems with the appellant's position. First, to the degree that the duress rests on the appellant's subjective belief that somehow her children were going to be deprived of foster care because of what had once happened with the state, we doubt that it is duress at all. Second, and of determinative importance, the trial judge, when the facts were in dispute, obviously accepted Draughon's testimony and rejected the appellant's. The judge did not abuse his discretion in finding the facts as he did. The claim of duress fails.

## FRAUD ON THE COURT

The appellant claims that the adoption was procured by a fraud on the court because neither the state nor anyone from LDS Social Services advised the court, at the time of the adoption hearing, that there had been a prior foster care placement and that the appellant had changed her mind about the adoption. The significance of a failure to advise the court of the prior placement is not clear to us, and seems of no particular importance. What is clear is that the appellant did communicate her change of mind to LDS Social Services, and the judge was not told of this before the order for adoption was signed.

■ The appellant makes this fraud on the court argument for the first time on appeal. Had she brought this up in the trial court, the judge would have had an opportunity to consider it fully and to make express findings with respect to it. She raises the matter too late. *See Schoenfelder v. Arizona Bank,* 165 Ariz. 79, 796 P.2d 881 (1990).

■ Even if the matter had been timely raised, the argument fails on its merits. An order for adoption will not be set aside for fraud on the court unless the court, in

entering its order, relied on the alleged fraud. *In the Matter of the Adoption of Hadtrath*, 121 Ariz. 606, 592 P.2d 1262 (1979). Here, it is clear that the court did not rely on the alleged fraud in granting the order of adoption. All of the facts which appellant asserts constituted a fraud on the court were spread before the court at the hearing on the motion to set aside the adoption order. The same judge who entered the order for adoption heard the petition to set that order aside. Although the appellant did not raise her claim of fraud at that hearing, it is safe to assume that had the trial judge felt that this information made a difference, he would have granted the petition to set aside the order for adoption.

The appellant has pointed to no law that would require LDS Social Services to advise the court that a person who had signed an irrevocable consent had changed her mind. By virtue of the very terms of the letter that the appellant had written to its attorney, LDS Social Services knew that the appellant was voicing her objection pursuant to legal advice. It did nothing to impede the appellant's right to bring her objections to the attention of the court. Having said that, we do not necessarily condone what occurred here. It would have been better practice for LDS Social Services to have advised the court fully as to any circumstance that might bear on the case.

## FAILURE TO GIVE NOTICE OF ADOPTION HEARING

■ The appellant's next claim is that she was denied due process of law because she was not given notice of the adoption hearing. She relies on A.R.S. § 8–111(5), which requires that notice of such hearings be provided to "any person or agency required to give consent by section 8–106 unless such consent has been filed prior to the court's setting of the hearing." It is undisputed that the appellant's consent to the adoptions was filed at the hearing, and not before it.

The appellant's argument fails to take into account the provisions of another statute, A.R.S. § 8–106(A)(1)(c). It reads:

A. No adoption of a child or a foreign born person twenty-one years of age or less shall be granted unless consent to adopt has been obtained and filed with the court from the following:

1. From both natural parents, if living, except in the following cases:

. . . .

(c) Consent is not necessary from a parent who has previously consented that an agency or the division place the child for adoption.

Since the appellant had placed the children with LDS Social Services for adoption, no further consent from her was necessary. *See In re Adoption of Krueger*, 104 Ariz. 26, 448 P.2d 82 (1968). It was LDS Social Services that was entitled to notice pursuant to section 8–111(5). Moreover, in the "Consent to Place Child for Adoption," the appellant expressly waived "any notice of any further adoption and severance proceedings." Accordingly, she was not entitled to notice of the adoption hearing.

## THE DISSENT

■ We have, thus far, discussed the issues as the appellant has couched them. We turn to consider how the dissent would treat those issues. The dissent lays stress on the appellant's efforts to deal with an unfortunate situation. We observe at the outset that however poignant the financial circumstances that led the appellant to consent to adoption, such are irrelevant under the statute. In counterpoint, there was also evidence that the appellant said that "[s]he was tired. She had been having kids since she was sixteen and she was just tired. She couldn't handle it any more."

The dissent expands the appellant's argument, and concludes that a natural parent who consents to the adoption of a child should be entitled to revoke that consent before the adoption is complete if there is "some compelling reason" for the revocation. The dissenter finds that "compelling reason" in the fact that the natural mother was not represented by counsel during the

adoption process, and the dissenter would set aside the order on that basis.

There are several problems with the approach the dissent takes. First, we do not believe that the case the dissenter relies on, *Yuma County Juvenile Action Nos. J–81–339 and J–81–340*, 140 Ariz. 378, 682 P.2d 6 (App.1984), supports her position. In that decision we said that once a valid written consent to adopt has been given and the adoption process has begun, the consent cannot be revoked in the absence of some "compelling reason." We equated such "compelling reason" with the fraud, duress, or undue influence which are the sole reasons for revocation under A.R.S. § 8–106. Unlike the dissenter, we do not read *Juvenile Action Nos. J–81–339 and J–81–340* to expand the grounds for revocation of consent beyond those allowed by the plain wording of the statute. We need not decide that question definitively because even if the dissent's interpretation of that case is correct, the decision affords the appellant no relief. It expressly recognizes that a consent to adoption cannot be revoked just because the natural parent changes his or her mind. That is all that happened in this case—the appellant changed her mind.

The dissent also suggests that although A.R.S. § 8–106 may restrict the grounds upon which consent may be revoked, it says nothing about the stage in the proceedings at which consent may be revoked. The dissent concludes that consent can be revoked at any time until the adoption proceedings are complete.

█ In our opinion, the plain meaning of the statute is that once consent is given, it is irrevocable, at any time, except upon the grounds set forth in the statute. The dissent cites no law to the contrary, and indeed concedes that the statute "purports to limit" prior judicial decisions which would have allowed a revocation of consent before adoption was complete. The certainty which is so important to the security of children and the peace of mind of those who want to adopt them justifies the barrier the statute erects to a revocation of consent. For authorities which discuss the policies behind restrictions on the revocation of consent, *see Van Wey v. Van Wey*, 656 S.W.2d 731 (Ky.1983), *cert. denied*, 465 U.S. 1066, 104 S.Ct. 1416, 79 L.Ed.2d 742 (1984) (importance of development of mutual affection between children and adoptive parents); *Ex Parte Fowler*, 564 So.2d 962 (Ala.1990) (easy revocation of consent discourages adoption); *Matter of S.*, 572 P.2d 1370 (Utah 1977) (adoption governed by contract principles). *See also* Goldstein, Freud, Solnit, *Beyond the Best Interests of the Child* (2d ed. 1979).

We turn to the argument raised by the dissent that allowing the natural mother to consent to adoption without advice of counsel is sufficient reason to set aside the adoption. As the dissent acknowledges, this right would require the court to appoint counsel in cases when a parent could not afford to retain an attorney. There are severe problems, especially in this case, with the approach the dissent takes. The issue of the right to counsel was neither briefed nor argued on appeal. Other courts have considered and rejected the very argument the dissent adopts. *See F.D. v. Associated Catholic Charities of New Orleans, Inc.*, 480 So.2d 380 (La.1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986); *Brown v. McLennan County Children's Protective Services*, 627 S.W.2d 390 (Tex.1982). We are unwilling to change the law so radically without the benefit of the adversary process. *See Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977); *American Federation of Labor v. American Sash and Door Co.*, 67 Ariz. 20, 189 P.2d 912 (1948).

If that were not enough, the question of the right to counsel was never raised in the trial court. While the record supports the fact that the appellant has had financial problems, it also reflects that at the time she wrote to LDS Social Services about revoking consent, she had received some advice from counsel. It is also clear that the appellant had counsel at the time she moved to set aside the order for adoption. Thus, even assuming that every parent who consents to adoption is entitled to counsel, the trial court was never present-

ed with facts upon which it could make a determination as to whether appellant qualified for a court-appointed lawyer.

Finally, every question that touches on the validity of the consent to adoption was presented to the trial court at the hearing on the Petition to Set Aside the Consent to Adopt at a time when the appellant was represented by counsel. Even if the dissent were correct as to the right to counsel, and even if the appellant qualified for appointment of counsel, this would not be the case in which to apply the rule.

### CONSIDERATION OF THE BEST INTERESTS OF THE CHILDREN

■ Finally, we consider an issue upon which the court is in unanimous agreement. The appellant asserts that it was error for the trial judge to take into account the best interests of the children in deciding whether to set aside the order for adoption. She says, correctly, that the best interests of the children are simply irrelevant because, under A.R.S. § 8–106(E), an adoption is irrevocable unless obtained by fraud, duress or undue influence. While the primary consideration in an adoption case may be the best interests of the child, this does not mean that the court can sever the parental rights of nonconsenting parents and order an adoption just because the adoptive parents can provide a better home for the child. *In re Adoption of Hyatt*, 24 Ariz. App. 170, 176, 536 P.2d 1062, 1068 (1975).

■ Nonetheless, we believe the judge's findings in that regard are mere surplusage. He clearly found that there had been no fraud, duress or undue influence, and having done so, it would have been an abuse of discretion to set aside the orders for adoption.

We have considered whether the judge's view of what was best for the children might have colored his finding on the issue of duress. We have read the record with that in mind. We find by clear and convincing evidence that there was no duress involved. On this record, we think it would have been difficult to reach any other conclusion on that point. It seems highly un-

likely that the judge's factual conclusion on this point was tainted.

In her brief, fleetingly, and during oral argument, the appellant asserted that had she known that the judge was going to consider the best interests of the children, she would have been prepared to introduce evidence on that issue. If the appellant was surprised to her prejudice by the judge's order mentioning the best interests of the children, she did not bring that to the attention of the trial court in a motion for reconsideration. Nor, in oral argument before this court, did she seriously suggest that she had anything to offer on that point that was not known to the trial judge at the time he entered the orders for adoption.

The judgment of the trial court is affirmed.

EHRLICH, J., concurs.

GRANT, Judge, dissenting.

I respectfully dissent.

The economic chaos which caused this mother to exhaust all of her options for child care and which finally caused the emotional duress leading to placement of her children with the state for adoption is starkly apparent from this record. Furthermore, the actions of the respondent and its counsel are less than admirable. The right to direct the up-bringing of one's children "is one of the most basic of all civil liberties." *Flores v. Flores*, 598 P.2d 893, 895 (Alaska 1979). The right to the care, custody, companionship, and control of one's children "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Lassiter v. Dept. of Social Serv.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 2159–60, 68 L.Ed.2d 640 (1981) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972)).

Adoption was unknown to the common law; the basis and results are conferred by statute. Adoption is therefore a creature of the state. *In re Maricopa County Juv. Action No. A–25646*, 130 Ariz. 589, 637 P.2d 1092 (App.1981). As such adoption

statutes must be strictly construed. *Westerlund v. Croaff,* 68 Ariz. 36, 198 P.2d 842 (1948).

Based on the evidence presented below the mother alleged the following as grounds to set aside the adoption: (1) there was legal cause to set aside her consent, i.e. fraud, duress, or undue influence in signing the relinquishment; (2) lack of notice to the natural parents regarding the February 23 adoption hearing; and (3) fraud upon the court stemming from LDS Social Services' failure to fully disclose the circumstances of the adoption to the judge at the time of the adoption hearing. It is the third ground with which I am most concerned.

When first faced with the question of the revocability of a consent to adoption, our Supreme Court stated that consent "may not be revoked *after the child has been placed in the possession of the adoptive parents except for legal cause shown,* as where the consent was procured through fraud, undue influence, coercion or other improper methods." *In re Adoption of Holman,* 80 Ariz. 201, 207, 295 P.2d 372, 376 (1956) (emphasis in original). The *Holman* decision was later interpreted to stand for the proposition that consent to adoption could be revoked, so long as the adoptive process had not begun. *In re Gila County Juv. Action No. 3824,* 124 Ariz. 69, 601 P.2d 1353 (App.1979). *But see In re Yuma County Juv. Action Nos. J–81–339 and J–81–340,* 140 Ariz. 378, 382, 682 P.2d 6, 10 (App.1984) (questioning the continued validity of *Gila County Juv. Action No. 3824* in light of subsequent statutory amendments).

In 1983, the legislature amended the adoption statutes to include a provision that "consent to adopt is irrevocable unless obtained by fraud, duress or undue influence." A.R.S. § 8–106(E). Although this amendment purports to limit the prior judicial decisions, the statute does not state the point in the adoption process at which the statutory provision should apply. Three time frames within the adoption process are relevant: (1) after consent but before the process has begun; (2) after the process has begun; and (3) after a decree of adoption is entered.

Since the adoption statutes must be strictly construed this statute should be read as limiting the revocability of the consent to adopt only after the adoption process is complete. Moreover, according to the statutory scheme for the adoption process, the consent must be filed with the court. A.R.S. § 8–109(B). The statute should be applied only to the time *after* the consent is filed, which normally coincides with the adoption hearing and decree.

Subsequent to the statutory amendment of A.R.S. § 8–106, this court stated the general rule as follows:

> We thus conclude that once a valid written consent to adopt has been given and the adoption process has begun, a parent may not revoke that consent unless there is a showing of some compelling reason for the revocation.... This conclusion is in accord with the 1983 legislative amendment to A.R.S. § 8–106, which now clearly precludes the revocation of a consent to adoption given in accordance with the requirements of A.R.S. § 8–107 except upon the basis of fraud, duress or undue influence.

*Yuma County Juv. Action Nos. J–81–339 and J–81–340,* 140 Ariz. at 382, 682 P.2d at 10. Significantly, the "some compelling reason" standard is less than the "legal cause" standard of the statute, the same standard required by the courts after the adoption is final. *See In re Adoption of Holman,* 80 Ariz. 201, 295 P.2d 372 (1956).

In the present case, the mother expressed her desire to revoke her consent about five months after signing the relinquishment. She unequivocally told the attorney for the adoption agency that she wanted all adoption processes halted if not yet final. At that point, the consent had *not* been filed, nor had the adoption hearing been held. However, the petition for adoption had been filed, and the children had been placed with the prospective adoptive family on a foster care basis. At the hearing to revoke consent, the agency's representatives testified that the natural parent's consent is effective when given to the agency, regardless of any later communications by the parent. The agency's in-

terpretation of the legal significance of the consent expedites the adoption process; but it cuts off the rights of the natural parents too soon, particularly where, as here, the natural parent has no independent legal advice about the rights being relinquished.

In proceedings to terminate the legal rights of a natural parent, the state must provide counsel for an indigent natural parent and counsel must be effective in representation of the parent. *In re Gila County Juv. Action No. J–3824*, 130 Ariz. 530 at 532, 637 P.2d 740 at 742; Rule 20, Rules of Procedure for Juvenile Court. The United States Supreme Court has decided that in parental termination proceedings initiated by a state, Fourteenth Amendment due process may require that counsel be appointed for a parent. *Lassiter*, 452 U.S. at 32–34, 101 S.Ct. at 2161–2163. Therefore if this natural mother had been at risk of losing her children in a parental termination proceeding, counsel would have been provided to her to represent her parental interests. Why should the risk of losing children by "consent" be less protected? The state provides counsel to indigent criminal defendants who plead guilty as well as those who go to trial. Rule 6.1, Arizona Rules of Criminal Procedure. The consequences here are no less dire. The parent-child relationship is an important liberty interest in which the state cannot interfere without providing the parents fundamentally fair procedures. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The termination of parental rights by A.R.S. § 8–537 is not inherently or factually distinguishable from a parental termination by consent and adoption. To allow the mother to consent to termination of her parental rights without the safeguard of advice of counsel is fundamentally unfair when the consent cannot be revoked prior to the adoption hearing and the mother need not be given notice of the adoption hearing as the majority holds. The crux of due process is the right to be heard and the right to adequately represent one's interests. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

This mother did her best to protect her interests. She visited LDS Social Services offices requesting information about her children. After two visits she was given the name of counsel for the agency. She wrote to him immediately, requesting that the adoption proceedings be stopped. He did not respond. He did not inform the court of the letter. The mother wrote to the juvenile judge twice. The first letter was forwarded to two other judges. The second letter went astray when the children could not be located because they had not yet been formally adopted. As the United States Supreme Court stated in *Lassiter*:

> If, as our adversary system presupposes, accurate and just results are most likely to be obtained through the equal contest of opposed interests, the State's interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the State acting for the child are represented by counsel, without whom the contest of interests may become unwholesomely unequal.

452 U.S. at 28, 101 S.Ct. at 2160.

The result reached by the trial court and affirmed by the majority was derived from an "unwholesomely unequal" process and therefore I dissent and I would set aside the adoption.