NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE ADOPTION OF H.A.

No. 1 CA-JV 23-0156
FILED 12-19-2023

Appeal from the Superior Court in Maricopa County
No. JA-556179
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
*Counsel for Appellant, Anthony A.*

Stuart & Blackwell, PLLC, Chandler
By Cory A. Stuart
*Counsel for Appellees, Antonio A. and Sarah A.*

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Anni Hill Foster joined.

---

**C A M P B E L L**, Judge:

**¶1**        Anthony A. (Father) is the biological father of Hellen,[1] a minor child. Father seeks relief from the superior court's denial of his petition to revoke his consent to Hellen's adoption by her paternal grandparents, Antonio A. and Sarah A. (Grandparents). Because Father failed to show that his consent was obtained by duress or undue influence, we affirm.

## BACKGROUND

**¶2**        Grandparents cared for Hellen since her birth in late 2019. In August 2020, the Department of Child Safety received a report that Father, who has a history of mental health issues and drug use, threatened to harm Hellen and other family members. The Department promptly filed a dependency action and formally placed Hellen in Grandparents' care. In November 2020, Hellen was adjudicated to be a dependent child.

**¶3**        Around that same time, Father was taken into custody for criminal conduct, but he maintained contact with Hellen through video calls. He remained incarcerated until April 2022, and upon his release, Grandparents—who had been appointed Hellen's permanent guardians the month before—continued to facilitate contact between Hellen and Father.

**¶4**        Father struggled to adjust to life outside of prison. He had trouble holding a job, was kicked out of a sober-living home, and reacted negatively to newly prescribed mental-health medication. In September or October 2022, he stopped taking the medication after suffering what he termed a "panic attack" resulting in inpatient mental-health care. During the same period, Grandparents filed a pro per petition to sever Father's parental rights, though they continued to facilitate his contact with Hellen.

**¶5**        Concurrent with their severance efforts, Grandparents sought to obtain adoption consents from both of Hellen's parents. Hellen's mother executed a written consent form in late October 2022, and Father did the

---

[1]        We use a pseudonym for the minor to protect her identity.

same in mid-January 2023. In February, Grandparents initiated the case at bar by filing a petition to adopt Hellen.

¶6         Approximately six months later, Father petitioned to revoke his consent, claiming it was obtained under duress and undue influence. He explained at an evidentiary hearing that he "was in a very stressful situation" at the time he signed the consent form based on his "life circumstances," which rendered him unable to fully comprehend the situation or make long-term decisions. But he acknowledged that he was taking no medications when he signed the consent, that he read the whole document and understood its effect, and that he was neither threatened nor promised anything. He described Grandparents as being "a little bit in a rush" because they paid for a mobile notary to witness his signature after regular business hours, but he admitted that no one gave him a time limit within which to sign the consent. He also acknowledged that he told the judge in the severance case (in which he was represented by counsel) that he wanted to sign the consent. And, though he claimed he had been worried Grandparents would cut off his contact with Hellen if he did not sign, he admitted that they had never restricted or even threatened to restrict his access to the child—and indeed, they were still facilitating contact at the time of the hearing.

¶7         The superior court denied Father's petition to revoke his consent. Father appealed.

## JURISDICTION

¶8         Under A.R.S. § 8-235(A), an aggrieved party in an adoption proceeding may appeal from "a final order of the juvenile court." Arizona Rule of Procedure for the Juvenile Court (Rule) 601(b)(2) lists examples of "final orders." Though the rule does not specifically identify rulings on consent-revocation petitions as "final orders," it provides that "final orders include . . . any other order that is final pursuant to Arizona case law." Rule 601(b)(2)(M). We have long treated consent-revocation rulings as appealable. *See In re the Appeal in Yuma Cnty., Juv. Act. Nos. J-81-339 & J-81-340*, 140 Ariz. 378, 379 (App. 1984); *In re the Appeal in Gila Cnty. Juv. Act. No. 3824*, 124 Ariz. 69, 71 (App. 1979); *Anonymous v. Anonymous*, 23 Ariz. App. 50, 51 (1975). Consistent with that treatment, Rule 414(h) directs courts to sign their consent-revocation findings and advise the parties of their right to appeal. We conclude that we have appellate jurisdiction.

**DISCUSSION**

**¶9**            A parent may not revoke his consent to adoption based on mere misunderstanding. *Acedo v. State Dep't of Pub. Welfare*, 20 Ariz. App. 467, 470–72 (1973). He may revoke the consent only if he shows, by clear and convincing evidence, that it was obtained by fraud, duress, or undue influence.[2] A.R.S. § 8-106(D); Rule 414(f).

**¶10**            Father alleged duress and undue influence. To prove duress and undue influence a parent must show that another person exerted pressure on the parent to obtain his consent: duress also requires a wrongful act or threat, and undue influence requires wrongful persuasion. *Anonymous*, 23 Ariz. App. at 51–52 (duress); *In re McCauley's Estate*, 101 Ariz. 8, 10 (1966) (undue influence). The surrounding circumstances, including those that make a particular parent more vulnerable to capitulation, may be relevant to the court's inquiry. *See* Restatement (Second) of Contracts § 175, comments a–c (duress); *id.* § 177, comments a–b (undue influence). But the mere fact that the parent is going through a stressful time (which is presumably true for most if not all individuals faced with the decision of whether to relinquish their parental rights) cannot alone create duress. *See Anonymous*, 23 Ariz. App. at 51 ("[T]he fact that the appellant was weakened by her recent delivery and depressed, as all women would be under similar circumstances, does not constitute duress."). Nor can duress be based on a parent's subjective belief that he must consent to avoid an undesirable consequence. *See In re the Appeal in Navajo Cnty. Juv. Act. No. JA-691*, 171 Ariz. 369, 372 (App. 1992) ("[T]o the degree that the duress rests on the appellant's subjective belief that somehow her children were going to be deprived of foster care [if she did not consent to adoption] because of what had once happened with the state, we doubt that it is duress at all.").

**¶11**            Here, Father testified unequivocally that no one threatened or promised him anything in exchange for his consent, that no one placed time constraints on him signing the consent, that he read and understood the effect of the consent, and that he told the judge in the severance case (where he was represented by counsel) that he wanted to consent. His worry that Grandparents would withhold access to Hellen if he did not consent was a

---

2            Father's reliance on the multi-factor standard for revocation set forth in *In re the Appeal in Pima County Juvenile Action No. B-7087*, 118 Ariz. 428, 430 (1978), is misplaced. The supreme court specified in that case that it was describing and applying a different state's "more liberal" standard due to the facts of that case. *Id.*

purely subjective belief unsupported by any evidence. By his own admission, he signed the consent form not because of any pressure exerted by Grandparents or anyone else, but because he was going through a stressful period in his life. There was no evidence, much less clear and convincing evidence, that his adoption consent was obtained by duress or undue influence as required for its revocation under Arizona law.

## CONCLUSION

¶12    We affirm the denial of Father's petition to revoke his adoption consent for the reasons set forth above.



AMY M. WOOD • Clerk of the Court
FILED:    TM

5